## CALBA SUMPTER VS. THE STATE OF FLORIDA.

1. An accomplice is, unquestionably, a competent witness against a prisoner charged with crime.

2. The admissibility of an accomplice does not depend on the ancient and exploded doctrine of approvement.

3. Where a prisoner is charged with the crime of administering poison, the proof must show that the poison was taken into the stomach, in order to a conviction under the statute.

4. It is not absolutely necessary there should have been a delivery of the poison to the person poisoned; but if taken from a place where it has been put by the prisoner, for that purpose, and any portion of it is taken into the stomach, it is an "administering" within the meaning of the statute.

Appeal from Columbia Circuit Court.

This case was decided at Tallahassee.

A statement of the case is contained in the opinion of the Court.

*A. T. Braham, R. W. Broome, A. A. Knight* and *A. B. Hagan* for Appellant.

Calba Sumpter, the appellant, and one Hector Thorn, on or about the 1st of November, 1866, were arrested under warrants issued by Justices of the Peace in and for said State and County, upon the charge of administering poison. Upon this charge they were committed to jail, to await their trial before the Suwannee Circuit Court, at the Fall Term, A. D. 1866.

At the said term of said court, Hector Thorn was released by the State, for the purpose of becoming an approver or States' witness against Calba Sumpter, his accomplice.

A true bill was found against Calba Sumpter, and he was put upon trial for the crime of administering poison, strychnine, or as the indictment reads: " Feloniously did adminis-

17

ter to one Cyrus McLemore, his wife Tabitha, and their children Louisa, Mason, Cyrus and Sam, twenty grains of a deadly poison, to-wits: trychnine, with intent in so doing, then and thereby feloniously, wilfully, and of his malice aforethought, with intent to kill."

The prisoner pleaded "not guilty."

Tabitha McLemore, witness for State, testified—"That a half hour before sun-down, she was cooking meat in a pot, when Hector Thorn came to her house, asked for his pipe, and observed that the pot needed fire, took it off and put on some wood, and then replaced the pot. She heard him remove the cover to the pot; as soon as he replaced the pot he walked off. Soon after, wishing to give one of her children some meat, she opened the pot and saw something white, like flour, on the meat and water; she tasted it, and found it bitter. In a few minutes Hector returned and said, 'Mamma, if you think I put poison in your pot, let me eat some of the meat.' She saw some of the meat, a piece as big as her hand, given to a dog; the dog died a few minutes afterwards."

Cyrus McLemore, a witness for the State, says—"His wife called him to look at a pot of meat, and my wife said that the stuff the in pot was strychnine. I gave leave to have the trial made on the dog; the dog died in about ten minutes after eating the meat; the dog showed no symptoms. There were no bad feelings between the prisoner and my wife. My daughter and the prisoner had lived together about three years."

Charles Stone, for the State, testified—"That sometime in July or August, the accused, Sumpter, told him he had some strychnine, and asked him if he needed any."

Hector Thorn, testified—"That Calba Sumpter gave him some kind of a substance which he called black pepper, and told him to put it in the food of the McLemores. He told the prisoner he did not think it was black pepper. Calba

Sumpter said it would season their food like damnation. The prisoner and myself are on good terms. He is my uncle. After putting the so-called black pepper in the pot, witness says he went away. He came back to the house of the McLemores, when Mr. Stone told him it was poison. Several persons were at the house of the McLemores, attracted by the old lady's crying poison.

"He further says he did not have any idea but what the substance was black pepper, but saw that the stuff was white."

The above embraces all the material parts of evidence for the State.

The time upon which the strychnine is said to have been administered is shown to have been on Friday, Nov. 26th, A. D. 1866.

No testimony was introduced by accused; and upon the above testimony and charge of the court, Calba Sumpter was found "guilty" and sentenced to be hung.

The prisoner, by his counsel, asked for a new trial upon the following grounds:

*First.* Because the court erred in deciding that the arraignment of the prisoner was sufficient.

*Second.* The court erred in charging that the putting of the poison in the pot was the same thing as administering it, providing that the poison was placed in the pot.

*Third.* The court erred in admitting the testimony of Hector Thorn, an accomplice.

*Fourth.* The court erred in over-ruling the motion made by the defendant's counsel for a new trial, because the finding in the case was contrary to evidence and law, and the testimony of Hector Thorn, the accomplice, was a surprise to defendant.

The court refused to grant a new trial. The prisoner, by his counsel, appealed.

We submit the following points of law as correct an applicable to the cause in argument:

1st. When a prisoner pleads "not guilty," he stands before the court, and in eye of the law, an innocent man; and it is only upon plain, and manifest, and incontrovertible testimony, that his guilt will be established. Every doubt must be in favor of the prisoner.

2nd. To substantiate and prove the guilt of the prisoner, intent and malice must be proven.

3rd. In all cases of poison, chemical tests should be resorted to; and that the substance or thing alleged to have been employed was poisonous must be proven; and the fact that it was administered by the prisoner, with the knowledge of its qualities, must be conclusively established.

4th. The evidence in capital cases must be simple, plain, direct, unconflicting and conclusive, and in cases of this kind, the "*corpus delecti*" must be established by incontrovertible evidence produced.

The uncorroborated evidence of an accomplice is insufficient to convict, and ought to be received with the greatest caution and care; and when entirely unsubstantiated or uncorroborated by other evidence, the court ought to direct an acquittal.

Proposition for a new trial—

1st. A new trial will be granted for misdirection of the Judge in matters of law material to the issue, if the verdict conforms to the charge. Hilliard's New Trials, 205, and note; 1st Starkie, 709; 1st Archbold, 645 and 945.

2nd. A new trial will be granted when illegal evidence has been received. Hilliard's New Trials, 311; Thompson's Digest. 524; Roscar, 120 to 125.

3rd. The uncorroborated testimony of an accomplice is not sufficient to convict, therefore the verdict is contrary to law and the weight of evidence, and a new trial ought to be

granted.   Blackstone 4, 330 ;  Roscoe Crim. Ev., 120 to 125 ;
1 Greenleaf, 534 ;  Shorewood's Starkie, 727 ;  1st Phillips'
Evidence, 111.

4th.  A new trial will be granted on the ground of sur-
prise.  Hilliard's New Trials, 399.

*G. J. Arnow*, Solicitor for the State.

Counsel  for  the  appellee  in  the  above  entitled  cause
responds to the bill of  exceptions filed by appellants  to the
judgment of the court below, in overruling motion for a new
trial in said court :

1. Respondent  answers  first  exception  in  this, that the
form of  the  arraignment  used  in  the  above cause was the
form which prevailed, and is still used in trials of felony  in
the Suwannee  Circuit  Courts  of  this  State, and  approved
usage, in the  absence of  written  rules, becomes  " common
law."

2. To  the  second  exception  respondent  answers,  that
placing poison  or  causing poison  to  be placed in the food,
was an administering in the sense of the statute, upon which
the trial rested.   Acts 1865, p. 23, sec. 4.

3. Accomplices have always been deemed competent wit-
nesses for the State.   The  witness  Hector was not an " ap-
prover" in the sense of the statute.   Bouv. Law Dictionary,
Approver ;  Philips on  Ev., vol. 1, pp. 31, 32, 33 ; 1 Arch.
Crim. Prac. and  Plead., p. 503 ;  Roscoe Crim. Ev., 153,
156 ;  Thomp. Dig., p. 524 ;  *Ibid.* p. 335, sec. 2, 3, top.

4. Respondent answers that said exception is in substance
embraced in the foregoing.

DOUGLAS, J., delivered the opinion of the Court.

This is an application for a writ of error to the judgement
of the Circuit Court of Columbia county.

The plaintiff in  error, Calba  Sumpter, was indicted and
tried at the  Fall Term of the Circuit Court for the County

of Columbia, Suwannee Circuit, on the charge of adminis-
tering poison to Cyrus McLemore and his family, consisting
of several persons.

The bill of exceptions shows, that on the trial the Solicitor
for the State, to prove the guilt of the prisoner, offered the
testimony of Hector Thorn, an accomplice in the offeree
charge, but against whom no bill of indictment had been
found. The evidence, as set out in the bill of exceptions,
also shows, that the poison was placed in a pot, with some
food designed for the use of McLemore and his family, but
that it was not taken by them, having been discovered in
time to prevent the consumption of the meat in the pot.

Upon the proof, the prisoner was convicted by the jury,
and sentenced by the court to suffer the extreme penalties
of the law.

The prisoner applied for and obtained a writ of error, and
now assigns as reasons for the reversal of the judgment and
sentence against him—

*First.* That the court below erred in admitting the testi-
mony of Hector Thorn, an accomplice.

*Second.* That the court erred in deciding that the putting
of poison in the pot, with the food designed for the use of
McLemore and family, though they did not take it into the
stomach, was an administering of poison within the mean-
ing of the act of the General Assembly, which declares:
"That if any person shall administer poison to another,
with intent to deprive him or her of life, he, she and their
aiders and abettors, shall be deemed to be guilty of a felony,
and upon conviction thereof, shall suffer death."

The question, whether an accomplice in a crime be a com-
petent witness, has doubtless frequently arisen on the cir-
cuits, but has never been decided by this court, and is now
before it for the first time, and, like all other questions of
evidence, depends on the well-settled and long established
principles of law on this subject.

Sumpter vs. The State of Florida—Opinion of Court.

The rule of evidence, as laid down by Lawrence, Judge, in the case of Jordaine vs. Lashbrooke, 7 Term Rep., 601, is, that "all persons are admissible witnesses who have the use of their reason, and such religious belief as to feel the obligation of an oath, who have not been convicted of any infamous crime, and are not influenced by interest."

It is not enough that a person may have committed an infamous crime, and that he may have confessed it. These facts may serve to destroy his credibility before a court and jury, and may render his testimony of little avail in the estimation of the latter, who are the exclusive judges of it; but the rules of law will not, on this account, authorize the court to exclude him from giving his testimony.

It will be seen from the above rule, which is believed to be the well-established law on the subject, that a *particeps* in the very crime with which the prisoner is charged is competent to prove the guilt of the prisoner, and this position is sustained by ample and weighty authority.

In the case of Rex vs. Jones, Lord Ellenborough said: "No one can seriously doubt that a conviction is legal, though it proceed upon the evidence of an accomplice. Judges, in their discretion, may advise a jury not to believe an accomplice, unless he is confirmed, or only in so far as he is confirmed; but if he is believed, his testimony is unquestionably sufficient to establish the facts which he deposes. It is allowed that he is a competent witness, and the consequence is inevitable, that if credit is given to his evidence, it requires no confirmation from another witness."

In Atwood's case, Seventh Crown Cases, 531, the twelve Judges were unanimously of the opinion, that the conviction of four prisoners, one of whom had been convicted on the uncorroborated evidence of an accomplice, was legal, and upon that opinion the four prisoners suffered the sentence of the law.

Hawkins, in Book 2, ch. 46, section 18, says: "It has

been long settled, that it is no exception against a witness that he hath confessed himself guilty of the same crime, if he have not been indicted for it; for if no accomplices were to be admitted as witnesses, it would be generally impossible to find evidence to convict the greatest offenders. Also, it hath been often ruled that accomplices, *who are indicted*, are good witnesses for the King until they be convicted." It is now well established, that the party must be *convicted* before he is rendered incompetent as a witness, and this upon the general principles of law, as laid down in the leading case of Jordaine vs. Lashbrooke.

In support of the principle, that accomplices are competent witnesses, see the cases of Hyde, 1 Hales, P. C. 303 ;  Robbin's case, 1 Leach, 464 ; Durham & Crowder's case, 1 Leach, 478 ; 2 Camp. Rep., 133.

These authorities abundantly show, that the Judge in the court below decided according to law in admitting the testimony of Hector Thorn, an accomplice.

It was contended in the argument before this court, that the admissibility of an accomplice depends on the ancient doctrine of approvement ; and as the act of the General Assembly, passed November 19th, 1828, Thomp. Dig., 524, provides that " approvers shall never be admitted in any case whatever," the competency of the testimony of accomplices is thereby forbidden.

It is a mistake to suppose that the competency of accomplices depends on or grew out of the doctrine of approvement. An approver is one who, being indicted for treason or felony, and when arraigned, confesses the fact before he pleads, and accuses others, his accomplices, in order to obtain his pardon. If he support his accusation in all respects, and the person or persons so accused by him be found guilty, the approver is *entitled* to his pardon ; but if the accused person is acquitted, the approver receives judgment to be hung, upon his own confession. 4 Black. Com., 329 ; Rudd's

case, 1 Leach, 115. An accomplice, who voluntarily gives his evidence, is not thereby discharged from punishment, nor is he entitled to a pardon if he succeeds in convicting a fellow-prisoner, nor subjected to punishment in consequence of his failure. Like all others charged with crime, his acquittal or his conviction depends on the legal evidence produced against him on his trial. His competency as a witness depends on the ancient principles of the common law, before adverted to, in the case of Jordaine vs. Lashbrooke, that no person is to be excluded as a witness from giving evidence on account of infamy, unless he has been convicted of any infamous crime. The question of infamy and moral depravity goes to his credibility, not to his competency.

The second error assigned was, that the court erred in deciding that the putting of poison in the pot, with the food designed for the use of McLemore and his family, though they did not take it into the stomach, was an administering of poison, within the meaning of the act of the General Assembly.

This statute has never received judicial construction by this court; yet one like it, in many respects, has been interpreted by the English Courts, and their interpretation will greatly aid in coming to a conclusion as to the proper construction of our own.

The statute of 9 Geo. IV, ch. 31, section 11, enacts, "That if any person unlawfully and maliciously shall *administer*, or *attempt* to administer, to any person, or shall cause to be taken by any person, any poison or other destructive things, every such offender shall, upon conviction, be deemed guilty of a felony, and shall suffer death."

It will be seen that the English statute is more extensive than our own; that it makes not only the administering of poison a felony, but also the attempt to administer poison a felony, punishable with death, while our act only punishes the actual administering of poison as a crime.

18

In a case which arose under the English statute, it was decided that to constitute the act of *administering* the poison, it was not absolutely necessary there should have been a delivery of the poison to the person poisoned, but that if she took it from a place where it had been put for her by the prisoner, and any part of it went into her stomach, it was an administering within the meaning of the statute. See Rex vs. Hannah Harley, 4 Carrington and Payne, 369. So also in the case of Rex vs. Cadman, 1 Moody's C. C., 114, the Judges were unanimously of opinion that the poison had not been administered, because it had not been taken into the stomach, but only into the mouth.

From these cases it will be seen, that although the English statute punishes the attempt to administer poison, yet the courts hold that to constitute the offence, the poison must enter into the stomach. In the case under consideration, the poison was put into a pot with the food intended for the consumption of McLemore and his family, and was discovered before any part had been taken into the stomach. On the authority of the above cited cases, there was not such an administering of poison as to constitute the offence provided for in the statute.

The second exception is well taken; the case must be reversed, and a "*venire facias de novo*" awarded.