MARY ANN KEECH, ALIAS MARY ANN NEWTON, APPELLANT,
vs. STATE OF FLORIDA, APPELLEE.

1. The accused being indicted as accessory to the murder of Ellen Wells by William Newton, pleaded in abatement that the certificate of the Chairman of the Board of County Commissioners had not been recorded together with the list of persons selected by the board as required by law, from which juries are required to be drawn. *Held* that the omission of the Clerk to record the certificate did not constitute an irregularity in the drawing, summoning or empaneling of jurors.

2. Since the date of "an act to amend section 5, chapter 1628, Laws o Florida, reducing the number of grand and petit jurors," approved February 20, 1875, not more than fifteen persons should be summoned and sworn on a grand jury. The purpose of the act was to reduce the number of grand jurors, and its effect was to repeal so much of the existing law as required a greater number to be sworn.

3. A second or subsequent count in an indictment should contain a statement of all the necessary facts and allegations to charge the offense. A reference to a former count for the purpose of supplying a material statement is not sufficient.

4. The twenty-first section of the act of 1868, relating to jurors, provides that when a sufficient number of jurors duly drawn and summoned cannot be obtained, the court shall cause jurors to be summoned "from the bystanders or from the county at large." The court ordered a deficiency to be supplied "from the bystanders or from the county at large," thus making the order in the alternative form: *Held*, that the mode of supplying the deficiency in either or both ways is left to the discretion of the court, and there was no irregularity which could work an injury to the accused.

5. After the jury had been sworn, but before any testimony had been taken, one of the number was found to be an alien who had not taken any step toward naturalization, and was one of a class prohibited by the constitution from being a juror. The court discharged him and had his place supplied with a competent person. *Held*, not irregular In such case the entire jury should be sworn anew.

6. A principal offender is, before judgment of conviction of felony, a competent witness against an accomplice or accessory in the same crime.

7. In "capital" cases, if a majority of the jury recommend the accused to the mercy of the court, the sentence must be imprisonment for life (Act of February 27, 1872, Ch. 1877.) It is held not to be error if the

court omit to inform the jury of this law, unless specially requested to do so.

8. One charged as an accessory before the fact, in an indictment for felony, cannot, by law, be tried before the principal offender is tried, but both may be tried upon one indictment.

9. In an indictment for murder, the part of the body upon which the injury was inflicted should be stated. The dimensions of an incised wound should also be given.

10. In capital cases, before pronouncing sentence, the Judge should ask the prisoner whether he has anything to say why the sentence of the law should not be pronounced against him, and this should appear on record. But the omission of this ceremony is not ground for a new trial, but only for setting aside the judgment or sentence already pronounced, to the end that it may be properly observed and judgment regularly pronounced.

Error to the Circuit Court of St. John's county. Accessory before the fact to murder in the first degree.

*A. A. Knight* for Appellant.

*First.* The court erred in overruling the plea in abatement on file in the above entitled cause.

*Second.* The court erred in overruling the motion to quash on file in the above entitled case.

*Third.* The court erred in overruling the motion to quash the second count of the indictment, as spread upon the motion docket, under date of October 1, 1875.

*Fourth.* The venires for petit jurors returned and filed September 20, 1875, showed that but eleven of the twelve jurors summoned were returned by the sheriff, whereupon the panel becoming exhausted upon the trial, the court directed jurors to be summoned from the bystanders or from the county at large to complete the panel, all of which was error upon the part of the court.

*Fifth.* After all the petit jury had been duly sworn, but before any evidence had been introduced, it appearing to the court that Ernest Frohn, one of the members of said petit jury, although a registered voter, was not a qualified elector, he court directed said juror, Frohn, to stand

aside; whereupon the panel was completed by taking a juror from the bystanders.

*Sixth.* The court erred in allowing William Newton, a witness for the prosecution, to be sworn, and allowing his testimony to go before the jury, upon the ground that the indictment in this case showed that said Newton was the principal in the felony under investigation, and the accused was the accessory.

*Seventh.* The court erred in allowing the said William Newton to be sworn, and in allowing said Newton's testimony to go to the jury, upon the following grounds: The said William Newton was, at the time he testified, under an indictment for a further and additional felony than the one for which the said defendant was being tried, to-wit: "Assault with intent to murder Henry Keech," marked Exhibit A, 2, and made part of his motion.

*Eighth.* The court also erred in admitting the testimony of William Newton, for the purpose of establishing another felony than the one with which the defendant stands charged, and also in admitting the testimony of Alonzo Hernandez, Dr. William Shine, and the testimony of other witnesses, to which exception was duly taken, to establish the same points, to-wit: the murder of Ellen Wells by said William Newton.

*Ninth.* The court erred in charging, as follows: "In considering the credibility of a witness, it should be considered with reference to his truthfulness or the reverse, and not to his character in other respects."

*Tenth.* The court erred in this, that it only submitted this case to the jury upon the definition of murder in the first degree, thus preventing the jury from considering the case in any other light than that the accused was guilty in that degree alone, or innocent of the charge.

*Eleventh.* The court erred in not charging the jury that the law allowed them to add to their verdict a recommendation of mercy.

*Twelfth.* Judgment should be arrested and a new trial granted because the accused was indicted as an accessory before the fact and not for a substantive felony, and therefore the accused should have been tried with or after the conviction of the principal felon.

*Thirteenth.* The jury came into court with the following verdict: "We, the jury, find the prisoner, Mary Ann Keech alias Mary Ann Newton, guilty of the charge, viz.: accessory before the fact to murder in the first degree.

FRANK GENOVAR, Foreman."

ST. AUGUSTINE, October 5, 1875.

Whereupon the court charged them as follows: "The verdict of the jury should be: we, the jury, find the prisoner guilty," or in case of acquittal: "we, the jury, find the defendant not guilty." "The name of the foreman should be signed to the verdict." All of which was error upon the part of the court, and duly excepted to by defendant's counsel. Whereupon the jury retired and brought in the following verdict: "we, the jury, find the prisoner guilty.

FRANK GENOVAR, Foreman."

ST. AUGUSTINE, October 6, 1875.

Motion overruled. Exception taken October 6, 1875. Appeal prayed in open court, said appeal to operate as a supersedeas. Thirty days allowed in which to perfect appeal. R. B. ARCHIBALD, Judge.

*Fourteenth.* The court also erred in not giving the prisoner an opportunity to say why sentence of death should not be passed upon her, as appears from record.

*A. A. Knight,* for petitioner in error, cited in support of the assignment of errors the following authorities:

On first ground of error. Whar. Amer. Crim. Law, 3 Ed. §§ 945, 1041.

Second ground of error. 6 Med. 62; Cooley's Con. Lim. 141; Con. State of Fla. Art. IV, § 14; Bush's Dig. 5, § 14; Act of February 20, 1875, in relation to grand and petit

jurors; Bish. on Statutory Crimes, § 154; 4 T. R. 2 and 4; Dwar. on Stat. 110, 111, and notes; 52 Barb. 533, 548; 12 Wheat. 270; 50 Penn. 150; 24 Ind. 194; ib. 155; 5 Beav. 582; ib. 154, note 4; ib. 156; 7 John. 497; 4 Cow. 556; 11 Wend. 329.

Third ground of error. Laws of Florida, act of August 18, 1868; Arch. Crim. P. & P. Vol. 1, 73; 1 Wash. C. C. 463; 4 Dall. 426; 2 Cush. C. C. 446; Bish. C. P. Vol. 1, § 381, note 3; 4 Carr. & P. 394; 7 Cal. 395, 398; Bish. C. P. Vol. 1, 1226.

Fourth ground of error. 13 Fla. 624.

Fifth ground of error. Hill. on New Trials, 16, § 6; ib. 130, § 15; 8 B. & C. 417; 12 Fla. 163; Amer. R. Vol. 15, 715.

Sixth ground of error. Greenleaf on Ev. Vol. 1, § 379.

Seventh ground of error. 9 Cow. 721; 2 Carr. & Payne, 411; 11 Fla. 252, 255.

Eighth ground of error. Bish. on Crim. Law, Vol. 1, 696: 29 Maine, 84.

Ninth ground of error. Greenleaf on Evidence, Vol. 1, § 416.

Tenth ground of error. 14 Fla. 522.

Eleventh ground of error. Bush's Dig. § 4, 273; Laws of Florida, Act of Feb. 27, 1872.

Twelfth ground of error. 13 Fla. 667; 39 Iowa, 118; 28 ib. 522; 7 Blachf. 20; Arch. C. P. 384; 13 Fla. 673-4; Wharton on Homicide, 2d Ed. §§ 177, 180; Wharton Amer. Crim. Law, 364-5, 369, 376; 11 Fla. 42.

Thirteenth ground of error. Bish. C. P. Vol. 1, § 1013; 8 Mich. 104; 14 La. An. R. 278, Amer. R. Vol. 11, 575.

Fourteenth ground of error. Arch. Cr. Pr. and Pl. Vol. 1, 676; 1 Chitty Cr. Law, 700; 2 Ala. 212; 11 Geo. 253; 3 Salk. 358; 3 Mod. 265; 4 Black. 376; 2 Hale's P. C 401-7-8; 1 Chitty Cr. Law. 720.

Keech v. The State of Florida.

*Mr. Attorney-General W. A. Cocke* for the State.

*Points in the Bill of Exceptions.*

1. Defendant moved to quash the venire of the grand and petit juries.

The court overruled the motion. The court did right. Act of Aug. 1, 1868, Sec. 5, page 17; Act of Feb. 20, 1875, Chap. 2043, page 55; Act of Feb. 20, 1875, Chap. 2046, No. 7, page 58; Constitution of the State, Article VI., Section 12.

2. There was a special plea in abatement. The State denied the allegations in the plea. They were not sustained, and the plea was overruled. Where the allegations of a plea are denied and not proven, the replication must be sustained.

The plea in abatement was properly overruled, because it does not present the proper legal defence. Wharton, Sections 536–537.

3. The defendant moved to quash the second count in the indictment on two grounds.

1. That the count shows that the court has no jurisdiction. The court had jurisdiction to try the defendant according to the indictment, as an *accessory before the fact.* Act of Aug. 6, 1868, Chap. 11, Sections 3–4–5, page 104.

2. That the second count is repugnant to the final count. This raises the question of jurisdiction, as to the right of the court over the person, and to try the prisoner for the offense charged, the party being in the State of Wisconsin at the time the murder was committed. Section 5 of Chapter 11 of Act, Criminal Laws of 1868, page 104; Wharton on the Conflict of Laws, Sections 875–876–878–879–881–921; Sedgwick on the Construction of Statutory and Constitutional Law, pages 64–65; Tyler vs. the State, 8 Michigan, 320; Commonwealth vs. McLean and others, 101 Massachusetts, 1; Peoples vs. Adams, 3 Denio, 190.

4. That the venire of the petit jurors was exhausted be-

Keech v. The State of Florida.

fore the panel was filled, and the court directed the jurors to be empaneled from the bystanders. *Vide* act relating to jurors, Aug. 1, 1868, Sections 21–22, and act in relation to jurors, &c., 1875, Chap. 2046, No. 7, page 58.

5. It then appeared that Ernest Frohn, one of the jurors, was disqualified, and the court ordered him to stand aside, and the panel was completed by taking a juror from the bystanders. This was in strict compliance with the statute of 1875, Chap. 2046, page 58.

6. Now, the case is before the jury; Newton offered as a witness; objected to because he was indicted as principal in the felony. Newton was indicted for a felony and was a competent witness. A conviction without judgment works no disability. Wharton's Amer. Crim. Law, Section 763; ib., 783, 6 Ed.; Russell on Crimes, Vol. 2, Sec. 960, 8 Amer. Ed.; Greenleaf on Evidence, Vol. 1, Sec. 380; Best on Evidence, page 264, paragraph 170; People vs. Whipple, 9 Cowen, 707; Peoples vs. Hevrick, 13 John., 82; Cushman vs. Loker, 2 Mass., 108; Skinner vs. Perot, 1 Ashmead 57; State vs. Valentine, 7 Iredel, 225; Dowley vs. State, 4 Ind., 428; The People vs. Costello, 1 Denio, 83; Keithler vs. the State, 10 Smeed & Marshall, 192.

7. Newton objected to as a witness because he was under indictment for another felony. No weight can be attached to this objection.

See how conclusively the law of this State settles this question. Bush's Dig., LXIX, Sections 2–3, page 323.

8. Exceptions taken; that in considering the credibility of the witness, the court charged that the credibility of the witness should be considered with reference to his truthfulness, or the reverse, and not to his character in other respects. The degree of credit given to the witness is a question for the jury. Greenleaf on the Law of Evidence, Vol. 1, Section 380; the People vs. Costello, 1 Denio, 83.

Instructions should be confined to the issue made by the pleadings. Hooker vs. Johnson, 21 Fla., 730; Observations

of Chief Baron Joy, top note to Greenleaf on Evidence, 1 Vol., Section 332, Redfield's Ed.

As to what is an accomplice. Bouvier's Law Dic., title, accomplice. See. as to practice in admitting an accomplice as a witness; ib. All persons charged as *particeps criminis* are looked upon in the light of accomplices. 1 Russell on Crimes, 21; 4 Blackstone's Com., 331; Best on Evidence, note 1, top page, 267.

Now we come to the motion for a new trial, which was overruled.

It will be observed by the court that up to the tenth specification in the motion for a new trial are the same points embraced in the bill of exceptions.

10. The tenth specification in the motion for a new trial was, that the court erred in this, that it submitted the case upon the definition of *murder in the first degree*, thus preventing the jury from considering the cause in other lights. *Vide* statute in relation to instructions of the court, Bush's Dig., LVII., Sec. 7.

11. The court erred in not charging the jury that the law allowed them to add to their verdict a recommendation of mercy. What law requires the court to make such a charge? *Vide* act of the Legislature, Bush's Dig., LVII., page 279, Sec. 7. This is all.

12. The twelfth specification for a new trial:

"Judgment should be arrested because the accused was not indicted for a substantive felony, but as an accessory before the fact, and that therefore the accused should have been tried with or after the conviction of the principal felon."

Not necessary to indict for a substantive felony. Act of 1868, Chap. 11, Sections 4–5.

See references previously made on trying a party as an accomplice.

13. The thirteenth specification for a new trial was an objection to the form of the verdict. Refer to the verdict. It is in strict accordance with the statute. *Vide* act.

The form of the verdict should be *guilty*.

Recommendation of mercy is at the discretion of the jury.

RANDALL, C. J., delivered the opinion of the court.

The plaintiff in error was indicted in October, 1875, in St. Johns county, as an accessory to the murder of one Ellen Wells, by William Newton, who was indicted for the murder as a principal.

I. The accused pleaded in abatement to the indictment that the certificate of the chairman of the County Commissioners was not recorded by the clerk, together with the list of persons selected as qualified to be jurors for the year 1875; and, further, that the said list contained the names of 301 persons instead of 300, and that said list shows that many names were erased therefrom, and others substituted in their stead. The evidence being produced to the court it was decided that the said plea was not sustained, and this is alleged as error.

In support of the first ground that the certificate of the chairman of the Board of County Commissioners was not recorded with the list of names, counsel refer to the third section of ch. 1628, Laws of 1868, which provides that the "list, certified and signed by the chairman of the Board, shall be forthwith delivered to the clerk, and by him recorded in the minutes."

It is not very clear that the law requires that anything be recorded except the list of names; the authority of the clerk for recording it being the certificate. The object of recording it is to preserve upon the records the list of names, and for the information and convenience of the court. It can scarcely be said that the omission of the clerk to record the certificate, or even the list, is an irregularity in respect to the selection, summoning or empaneling of jurors. If the clerk neglects to perform such duty as directed by the statute, the court may require and compel him to do it at any time, and thus the omission is cured. The accused cannot be

prejudiced by it. If the list is, in fact, certified to the clerk, he is required to write the names on separate slips of paper, and deposit them in a box from which the juries are drawn, and it can make no difference to the accused that the list or certificate is not recorded until after the ballots are thus prepared or the jury drawn. As to the plea that there were 301 names instead of 300, it appeared that some names had been erased and others substituted before the list was brought to the clerk, and that 300 only remained ; and it did not appear that any change had been made after the Board had completed the selection, and the presumption is that the erasures and interlineations were made by the Board, especially as it was not . claimed that the list had been changed after it left their hands. As the evidence showed that the names remaining did not exceed 300, there was no error committed by the court in denying the plea.

. II. The accused moved to quash the special venire for grand jurors upon the ground that the names of more than fifteen persons were drawn and summoned, and also moved to quash the indictment upon the ground that sixteen persons were sworn, and officiated as grand jurors in the finding of the same.

Section five of an act relating to jurors (ch. 1628 above cited) provided that the clerk, thirty days before the sitting of the court, should draw from the box the names of not less than eighteen, and not more than twenty-three persons, to serve as grand jurors. Section nine says " there shall not be more than twenty-three, nor less than sixteen persons sworn on any grand jury."

By " an act to amend section five of chapter 1628, Laws of Florida, reducing the number of grand and petit jurors," approved Feb. 20, 1875, the fifth section was amended by providing that the clerk should " draw from the box the names of not less than twelve, nor more than fifteen persons, to serve as grand jurors at said court." The Legislature,

Keech v. The State of Florida.

however, omitted to expressly repeal or amend the ninth section.

In construing statutes which seem to conflict, the rule is well established that the later statute will prevail with reference to the subject matter of both, and if the two cannot stand together, the former will be deemed to be repealed by implication, in order to advance the remedy evidently intended to be accomplished by the Legislature; and in looking for the intent it has been sometimes necessary to observe the title to an act. This is peculiarly so under the present constitution, which, like many of the constitutions of the new States, and recent changes in some of the older, provides that an act of the Legislature "shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title." The title of the amending act under consideration evidently shows that the purpose of the Legislature was to "reduce the number of grand jurors," by providing that not more than fifteen should be drawn and summoned, instead of twenty-three as the law then stood. If section nine is permitted to stand, we have then a law providing for the drawing and summoning of fifteen, and then after the court convenes, a special venire must be issued to make up the deficiency. One of the safe-guards against abuse in the construction of juries is in the publicity, fairness and deliberation required by law, the responsibility for a proper selection being thrown upon public officers who are supposed to be responsible to the law and to the public. The selection and the drawing were to be public and to become of record, subject to the inspection of the public, in order, among other things, that any improper or irregular practice or conduct should be criticised and detected. The law, it is true, provides that the sheriff shall "return forthwith such farther number of grand jurors as may be required" to supply any deficiency, whenever those duly summoned failed to appear, or when those duly drawn could not be found. But it never

was the policy of the Legislature to provide that a portion of the grand jury should be selected by the impartial mode of drawing by ballot, and another portion left to the selection of the sheriff upon his own judgment. Yet this would be the inevitable result if the ninth section were allowed to stand—a deficiency would *always* exist by positive enactment. It is not believed that the Legislature intended that there should be *always* a deficiency. In providing that "not more than fifteen persons" should be drawn to serve as grand jurors, it was not intended that if the fifteen were summoned and appeared, there would yet be a "deficiency," because, if all who are allowed to be summoned are called and appear, no deficiency is contemplated, unless it appears to have been the policy of the Legislature to place the construction of the grand jury practically in the hands of a single person (the sheriff) by allowing him, in all cases, to select eight of them. This, instead of advancing the remedy, would advance the evil. We do not think that if the fifteen duly drawn are summoned and appear, there is any "deficiency" to be supplied, the deficiency contemplated under the law as it stood, having reference to the failure to summon some of those named in the venire, or the failure to appear of a sufficient number of those drawn and summoned in the manner provided to compose the jury. The title of the amending act is adopted by the Legislature itself in pursuance of its law making power, and as has been intimated it necessarily expresses, by force of the constitution, the intention of the enactment. That intent, so plainly expressed as in this instance, leaves nothing to inference. It was to reduce the number of jurors below the number required by the existing law, and it becomes meaningless and powerless if the ninth section can survive. As we believe it was contrary to the policy of the law as well as contrary to the express intention to allow it to stand, it must be held that any part of the former law which stands in the way of the reduction is necessarily repealed. Any

other conclusion would defeat altogether the plain import of the act last passed, and deprive it of any and all effect as to grand juries.

The special venire, therefore, calling for more than a number sufficient to make a grand jury of fifteen persons, and the indictment found by sixteen persons sworn as a grand jury, should be quashed. For the purposes of this case, it is, perhaps, not necessary to consider any of the remaining errors assigned, yet as they are important as questions of practice we will notice some of them.

III. The third error assigned is, that the court overruled the motion to quash the second count of the indictment.

The first count charges, first, that William Newton murdered Ellen Wells, and, second, that the accused Mary Ann Keech, *alias*, Mary Ann Newton, at, &c., in the State of Florida, was accessory thereto before the fact, and did counsel, hire and procure the said William Newton to commit the murder.

The second count omits to allege the fact of the murder by William Newton, in express words, but charges that Mary Ann Keech, on, &c., in the State of Wisconsin, did aid the said William Newton by hiring, &c., the commission of the murder of Newton " in manner and form aforesaid," referring to the allegation of the murder as stated in the first count.

The use of " counts " or different forms of charging the offense in one indictment is allowed in practice, but it is not proper in subsequent counts to omit any of the averments necessary to a complete statement of the offense. (Bishop's Criminal Procedure, §§ 182, 185 ; State vs. Langley, 10 Ind. 484.)

It is allowed, however, in a second count to refer to persons named in the first count, as " the said A. B.," "the said wife," &c., thus pointing to the same person named in the first. (Bish. Cr. Pros. §187 and cases cited.) But the only safe rule is to state the offense and the names of persons and

places in each count, in all cases where it is deemed necessary to employ more than one statement of the offense.

IV. The fourth error assigned is that the court directed the sheriff to summon. "from the bystanders or from the county at large," a juror to complete the panel, there being a deficiency by reason that the "venire was exhausted before the panel was filled."

It does not appear by the record that a sufficient number to make a jury was not summoned, but that the venire was exhausted and a sufficient number had not been obtained. The point of the exception, then, is, that the Judge directed the selection to be made in the language of the statute, "from the bystanders or from the county at large," instead of a direction to summon the requisite juror from bystanders only, or from the county at large only. As the statute gives a discretion to the court in the matter we cannot discover that an error was committed in putting the order in the alternative form ; and even if it were deemed an irregularity it is not one which we conceive could work an injury to the accused.

V. The fifth error alleged is, that after the jury had been empanneled and sworn, but before any evidence had been introduced, one of the jurors was discovered to be an alien, who had taken no step to become naturalized ; whereupon he was discharged and another person summoned and sworn in his stead.

We must approve the action of the court. By the Constitution, Article IV., Section 23, an alien who had not taken the necessary oath in view of naturalization, is not a competent voter and is expressly *prohibited* from being a juror.. In Tennessee a verdict was sustained where a minor was withdrawn from the jury after being selected, and before he was sworn, and another person substituted. (Hines vs. the State, 8 Humph., 597.) In Illinois it was held correct in a capital case to strike off a juryman after he was sworn on the ground that he was an alien. (Stone vs. State, 2 Scam.,

326.) See, also, Com. vs. McFadden, 11 Harris, Par. 12, where a person sworn on the jury was found incompetent from prejudice. (Wharton's Amer. Crim. Law, Sec. 590; Bishop's Crim. Pro. Sec. 808, citing Tooel vs. Com.; 11 Leigh, 714; People vs. Damon, 13 Wend., 351; McGuire vs. State, 37 Mississippi, 369.) The practice in such cases is, if the jury has been sworn, to discharge an incompetent juror, and, after filling his place, to swear the entire panel anew. The case of the State vs. Madoil, 12 Fla. R., arose before the adoption of our present Constitution. The objection to a person who is, by the express terms of the Constitution, prohibited from being a juror, taken by the defendant or by the State before the trial had been entered upon by the production of any testimony, is one which the court could not ignore without great impropriety. Nor do we understand that the court in the case of Madoil held otherwise.

In the present case the objection to the juror was not merely a ground of challenge which the party may waive by declining to challenge, but it goes to the very foundation of the right of trial by a jury of the country, a trial by one's peers, and the retention of the prohibited person upon the jury involved a violation of the Constitution of the State; and a new trial upon the verdict of a jury so constituted would be inevitable if, in a criminal prosecution, the accused was convicted.

VI. The second error assigned is, that the court allowed William Newton, a witness, to be sworn on the part of the State, while the indictment showed that Newton was the principal in the felony charged and the accused an accessory.

According to the English law, it was left to the judges in each particular case to determine whether accessories and accomplices should be allowed to testify. But an accomplice is not, as a question of law, disqualified, and even the principal is not disqualified as against an accomplice until con-

victed and sentenced as a felon. , (Roscoe's Cr. Ev.,, 153; *et seq;* Wharton's Amer. Crim. Law, Sections 783–4.)

"It is not enough that a person may have committed an infamous crime, and that he may have confessed it. These facts may serve to destroy his credibility before a court and jury, and may render his testimony of little avail in the estimation of the latter, who are the exclusive judges of it; but the rules of law will not, on this account, authorize the court to exclude him from giving his testimony." Sumter vs. the State, 11 Fla., 247. And in several cases cited by the court, it was held that a conviction upon the testimony of an accomplice was legal, though the accomplice was uncorroborated.

An act of March 15, 1843, (Thomp. Dig. 335,) provides that "no person shall be deemed an incompetent witness by reason of having committed any crime unless he has been convicted thereof in this State," and it follows that it is not within the discretion of the court, in this State, to admit or to reject the witness, for he is, by express statute, a competent witness.

It was further objected to the competency of the witness, Newton, that he stood indicted for another felony, to-wit: an attempt to murder Henry Keech, and counsel cites authorities under English law in support of the objection. The statute, however, declares that he is a competent witness, notwithstanding he has been guilty of *any crime* until he has been " convicted theereof;" so that, until a judgment of conviction has been pronounced, he may be a witness, the jury being the proper tribunal to judge of the value of his testimony.

VII. The ninth ground of error relates to the charge of the court to the jury. The court charged as follows: " In considering the credibility of a witness, it should be considered with reference to his truthfulness or the reverse, and not to his character in other respects." 

We do not discover from the record whether an attempt

Keech v. The State of Florida.

was made to impeach any of the witnesses, or whether this portion of the charge may have been suggested by comments made by counsel upon the character of witnesses. As a general proposition, the rule, as given, is correct, according to the old books, though in some States inquiry is permitted into general character as a basis for an opinion as to whether the witness should be believed on oath. (Wharton, Section 814.) If this portion of the charge related to the witness, Newton, it is not sufficiently full and explicit, for the credibility of this witness depended not alone upon his general veracity, but upon his connection with this case, his relation to the parties, his position as an accused party, and his manner of giving his testimony, all which were necessarily before the jury, and his credibility, in view of all these surroundings, was to be judged of by the jury.

It is alleged for error that the judge gave the jury the definition of murder in the first degree only, thus precluding them from considering the principal offense as of a different degree. This is a mere hypothetical proposition of counsel. The charge of the court, as given in the record, does not sustain the assignment, and this court has always refused to consider questions not embraced in the record.

It is further alleged that the court erred in omitting to instruct the jury that "the law allowed them to add to their verdict a recommendation of mercy," in view of the statute of 1872, which provides that when such recommendation is made in cases of murder, the penalty shall be imprisonment for life instead of hanging.

We know of no rule requiring the court to instruct the jury in regard to the punishment to be inflicted upon criminals. It would be very proper for the court to instruct the jury as to the existence of this law, in all capital cases, and it would undoubtedly be the duty of the court to do so if it were specially requested. In this case we find no exception taken on account of the omission, nor any evidence that the court was so requested.

VIII. The twelfth ground of error is that because the accused was indicted as an accessory before the fact, and not for a substantive 'felony, the accused should have been tried with, or after the conviction of, the principal felon.

We have already said that the second count of the indictment was not good. The first count charges the accused as an accessory, and it is expressly required by law that the accessory before the fact shall be tried either at the same time with the principal or after the conviction of the principal, unless the accused be indicted for a "substantive felony." (See Chapter xi, Section 4, Criminal Code of 1868.) The record fails to show that the principal had been tried at the time the accused was tried, and, therefore, the trial of Mrs. Keech, as an accessory, was premature.

IX. It is also insisted that the indictment was defective, in that it does not show upon what part of the body of the deceased the wound was inflicted. We believe it is uniformly held in the English books that the part of the body in which the deceased was wounded should be particularly stated. (2 Hawk. P. C., Ch. 23, § 80.) The English common law in relation to crimes and misdemeanors, except as to the mode and degree of punishment, prevails here by express statute.

The dimensions of the wound, if it be an incised wound, are required to be stated, according to most of the authorities.

X. As a thirteenth ground of error it is alleged that the jury came into court and rendered the following verdict: "We, the jury, find the prisoner Mary Ann Keech, alias Mary Ann Newton, guilty of the charge, viz: Accessory before the fact to murder in the first degree." Wherefore the court charged them that the form of the verdict should be "guilty" or "not guilty." The jury then retired and brought in a verdict of "guilty."

It is insisted that this is a special verdict, and is, there-

fore, not amendable as to matter of fact. In the present case, as the indictment .charged the accused as an accessory before the fact, the alteration in the form of the verdict was immaterial, and, therefore, the proceeding on the part of the court and jury was not erroneous. The verdict, however, as first brought in, ' showed that the offense, as found by the jury, was one which should not have been tried until the principal had been tried and convicted, or they should be tried together.

XI. Lastly, it is alleged that the court erred in omitting to ask the prisoner before pronouncing the sentence, whether she had anything to say why the sentence of death should not be pronounced upon her.

It is laid down by Bishop (Cr. Pro. I., § 865) that it is indispensably necessary that this ceremony should be observed in capital cases, and that it should appear of record that it was observed, and the authorities cited sustain this conclusion. (4 Bl. Com. 370, 375, note 2; 4 Burr. 2086; 3 Mod. 265; Rex vs. Speke, 3 Salk. 358; Rex vs. Geary, 2 Salk. 630; West vs. the State, 2 Zabriskie, N. J. 212; Hamilton vs. Com. 4 Harris, Pa. 129; Safford vs. People, 1 Parker C. C. 474; Dyson vs. the State, 26 Mississippi, 362; Crim vs. the State, 43 Ala. 53.)

But although it may be sufficient ground for arresting or setting aside the judgment or sentence, it does not seem to be good ground for a new trial. If, in a capital case, the court had omitted this traditional ceremony of asking the prisoner why the sentence of the law should not be pronounced, (material only because the prisoner is then and thereby informed that sentence is about to be pronounced, and that he may then urge any reason why the final judgment should not be entered,) the utmost that may be asked is, that the judgment be set aside and the prisoner remanded to the proper court to be dealt with according to law, the verdict standing unimpaired.

The judgment is reversed and the case remanded to the

Circuit Court for St. Johns county, with directions that the indictment be quashed for the reasons herein stated.