ERWIN SESSIONS, *alias* LIGHTNING, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed August 15, 1921.

1.  Where an indictment for murder of W. charges that the defendant shot off and discharged a pistol "at, upon and into the said W., thereby and thus striking the said W. with said leaden bullets, inflicting on and in the body of the said W. one mortal wound," etc., proof that the mortal wound was in the head of W., is not a fatal variance, since in view of the terms of the indictment the words "and in the body of" may be regarded as meaning "and in the person of," or as being surplusage.

2.  It is well settled that a defendant is not entitled as of right to an instruction to the jury to return a verdict of acquittal.

3.  An instruction in a trial for murder that there is no evidence before the jury authorizing a conviction for a particular degree of unlawful homicide violates the spirit of the statute requiring the charge to be upon "the law of the case only," but such a charge, though technically erroneous, will not constitute reversible error, if it relates to a higher degree than that of which the accused was convicted, or if it relates to a degree lower, but there was no testimony before the jury from which it could with any reason have formed a verdict of guilty of the excluded lesser degree.

4. Where the evidence is ample to sustain the verdict and no error appears, the judgment will be affirmed.

A Writ of Error to the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Affirmed.

*E. L. Bryan,* for Plaintiff in Error;

*Rivers H. Buford,* Attorney General, and *J. B. Gaines,* Assistant, for the State.

PER CURIAM.—The indictment herein charges as follows: "That Erwin Sessions, alias Lightning, on the fifth day of April in the year of our Lord one thousand nine hundred and twenty, at and in the County of Hillsborough aforesaid, did unlawfully and feloniously, and from a premeditated design to effect the death of one John Watson make an assault upon the said John Watson, and with a certain pistol which was then and there loaded with gunpowder and leaden bullets and which said pistol he the said Erwin Sessions alias Lightning, then and there had and held in his hands, he, the said Erwin Sessions, alias Lightning, did then and there unlawfully, feloniously and from a premeditated design to effect the death of the said John Watson, shoot off and discharge the said pistol so loaded with gunpowder and leaden bullets as aforesaid, and by him, the said Erwin Sessions, alias Lightning, then and there had and held in his hands as aforesaid, at, upon and into the said John Watson, thereby and by thus striking the said John Watson with the said leaden bullets, inflicting on and in the body of the said John Watson one mortal wound, of which said mortal wound,. the said John Watson then and

there died; and so the said Erwin Sessions, alias Light-ning, in manner and form aforesaid, did unlawfully and feloniously, and from a premeditated design to effect the death of the said John Watson, kill and murder the said John Watson; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Florida.''

Writ of error was taken to a conviction and judgment of murder in the second degree.

The evidence showed the fatal wound was in the head and a variance is claimed in view of the charge that the defendant inflicted ''on and in the body of the said John Watson one mortal wound,'' etc. The charge is that the defendant shot off and discharged a pistol ''at, upon and into the said John Watson, thereby and thus striking the said John Watson with the said leaden bullets, inflicting on and in the body of the said John Watson one mortal wound,'' etc. The words ''and in the body of'' may be regarded as meaning ''and in the person of'' or as being surplusage. Manifestly the charge is that the wound was inflicted on the person of the decedent where it was mortal in its nature; and there was no intent to charge that it was not inflicted in the head of the decedent. There was no fatal variance between the allegations and the evidence. This ruling does not conflict with the decision in Walker v. State, 34 Fla. 167, 16 South. Rep. 80.

It is well settled that a defendant is not entitled as of right to an instruction to the jury to return a verdict of acquittal. Yarbrough v. State, 79 Fla. 256, 83 South. Rep. 873.

An instruction in a trial for murder that there is no evi-dence before the jury authorizing a conviction for a par-

ticular degree of unlawful homicide violates the spirit of the statute requiring the charge to be upon "the law of the case only," but such a charge, though technically erroneous, will not constitute reversible error, if it relates to a higher degree than that of which the accused was convicted, or if it relates to a degree lower, but there was no testimony before the jury from which it could with any reason have formed a verdict of guilty of the excluded lesser degree. Thomas v. State, 47 Fla. 99, 36 South. Rep. 161.

There is ample evidence to sustain the verdict, no material errors of law or procedure are shown, and it does not appear that the jury was not governed by a due consideration of the evidence in rendering the verdict.

Affirmed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.

BROWNE, C. J., dissents.

BROWNE, C. J., Dissenting.—I am forced to dissent, because it seems to me to be clearly settled in this State that an indictment must state with some degree of particularity, and wih due regard to truth, upon what part of the human frame the mortal wound was inflicted.

One of the grounds for reversal in the case of Keech v. State, 15 Fla. 591, was because the indictment in describing the wound of the deceased, charged that the defendant, "with a certain pistol, loaded, etc., shot off and discharged, etc., did strike, penetrate and wound the said Ellen Wells." In passing on that allegation Mr. Chief Justice Randall said: "We believe it is uniformly held

in the English books that the part of the body in which the deceased was wounded should be particularly stated. (2 Hawk. P. C., Ch. 23, 80.) The English common law in relation to crimes and misdemeanors, except as to the mode and degree of punishment, prevails here by express statute."

Many courts hold that where the indictment charges the wound to have been inflicted upon the "body," or upon the "head" of the deceased, that it is not necessary to allege the particular part of the body or head where the wound is inflicted, and that if the indictment alleges that the wound was inflicted upon a certain part of the head, or body, and the testimony shows that the location of the wound on the head or body was not accurately described in the indictment, that it is not a fatal variance.

But in describing where the wounds are inflicted the pleader must have some regard for the meaning of words as decided by the courts, and this court has very clearly, emphatically and specifically defined what is meant in law by the word body, when describing in an indictment where a wound is inflicted.

In the case of Walker v. State, 34 Fla. 167, 16 South. Rep. 80, the indictment was attacked because it alleged that the wound was made "upon the body of him, the said Wiley Bentley," without stating upon what part of the body the wound was inflicted. The court held that this description was sufficient because the "body" is a well known part of the human frame as distinguished from other parts. After saying that it was not necessary to allege upon what particular part of the "body" the mortal wound was inflicted, the court proceeded to define what is meant in law by the word "body," and said: "The word 'body' as applied to the human frame, in ordinary

language, has a well-defined and well-understood significa-
tion. It means the trunk, as distinguished from the head
and limbs, that part of a human being between the upper
part of his thighs or hips and his neck, excluding his arms.
The case of Sanchez v. People, 22 N. Y. 147, is a case very
similar to the one at bar. In that case the court said:
'The indictment charges the commission of the murder in
the following words: 'And that the said Felix Sanchez,
with a certain sword which he, the said Felix Sanchez, in
his right hand then and there had and held, the said Har-
mon Curnon, in and upon the body of him the said Har-
mon Curnon, then and there wilfully and feloniously, and
of his malice aforethought, did stab, cut and wound, giv-
ing unto the said Harmon Curnon then and there with the
sword aforesaid, in and upon the body of him the said
Harmon Curnon, one mortal wound, of the breadth of one
inch, and of the depth of three inches, of which said mortal
wound he the said Harmon Curnon, at the ward, city and
county aforesaid, then and there instantly died.' The in-
dictment does not otherwise show upon what part of the
body of Curnon the mortal wound was given; and the
counsel for the plaintiff in error now contends that the
omission is fatal. The indictment, in my opinion, is suffi-
ciently certain in this respect. By the word *body*, in this
connection, is to be understood the trunk of the man, in
distinction from his *head* and limbs. This is the doctrine
of the books on the subject. Long's Case, Coke's R. Pt. 5,
120.''

With this judicial pronouncement separating the various
parts of the human frame into *arms, legs, body* and *head*,
I cannot avoid the conclusion that the testimony, estab-
lishing as it does that the mortal wound was inflicted on
the head, is a fatal variance from the allegations of the
indictment that charges the wound to have been on the

"body" or trunk, and that a wound on the head is not, and cannot be, a wound on the body.

In the rapid strides being made by the courts away from old and long settled common law principles, it may be that it would have been sufficient to have alleged that the wound was inflicted upon the "person" or "frame" of the deceased, but where the pleader sees fit to describe the wound with more particularity, the proof must conform in some slight degree to the allegations in the indictment; thus, an indictment charging a person with larceny of an animal of the bovine genus, would be sufficient if the testimony showed that the animal was either a cow or a steer, but where the indictment charges a person with stealing a cow and the proof showed that the animal stolen was a steer, it was held by this court to be a fatal variance. Mobley v. State, 57 Fla. 22, 49 South. Rep. 941.

The consequences of a fatal variance between the *allegata* and *probata* cannot be avoided by holding that the specific description may be regarded as "surplusage." This court has recently passed on that very point, in the case of Smith v. State, 74 Fla. 75, 76 South. Rep. 774. In that case the indictment described a cow that was the subject of larceny, as having been branded "T," and the evidence showed that the brand found upon the hide of the animal stolen, was "Diamond T." This court quoted approvingly from Allen v. State, 8 Tex. App. 360: "Indictment for theft of a branded animal need not allege or describe its brand; but, when alleged as descriptive of the animal, the proof must correspond with the allegation, and a variance between the allegation and the proof is material and vitiates a conviction."