# J. BUCHANAN CROSS

## *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. INDICTMENT—*for forging bank check—averment or proof that instrument was stamped—not required.* An indictment for forging a bank check, need not aver that the instrument alleged to have been forged had the proper revenue stamp attached to it; and a conviction under such an indictment would be good, without proof of such fact, if the instrument was proved to be false and forged, and made with the intent charged.

2. SAME—*instrument made by an agent in the name of his principal, not necessary to aver agent's authority.* And in such case, where the forged paper purported to have been made by an agent, in the name of his principal, it is not necessary that the indictment should aver the authority of the agent, or to aver that it was so drawn.

3. SAME—*setting out instrument in hæc verba sufficient.* Under our code of criminal procedure, an indictment, setting out the instrument alleged to have

been forged, in *hæc verba*, with an averment that it was made with intent to defraud the party whose name is signed to it, is good.

4 SAME—*charging the offence*—An indictment is sufficient, if so plainly drawn that the nature of the offence may be understood by the jury.

5. VARIANCE—*objection for, must be taken at the trial.* It is well settled in this State, that an objection for variance must be taken at the trial. It is too late to make it on error.

6. SAME—*in criminal actions.* In an indictment for forging a bank check, the check was set out in *hæc verba*, with the omission of the figures denoting the number of the check, and, also, of the letter " C" written under the signature: *Held,* that there was no variance.

7. INDICTMENT.—*authority to draw the check—when will be inferred.* And, in such case, where the proof showed that the agent was in the habit of signing his principal's name to checks, and which was permitted by his principal, his authority so to do, will be presumed, in the absence of counter evidence.

8. ACCOMPLICE—*definition of.* An accomplice is one who is, in some way, concerned in the commission of a crime, though not as a principal ; and this includes all persons who have been concerned in its commission, whether they are considered, in strict legal propriety, as principals in the first or second degree, or merely as accessories before or after the fact.

9. CRIMINAL LAW—*conviction supported alone by the testimony of an accomplice— legal.* The law is well settled, that a legal conviction may be had, upon the uncorroborated testimony of an accomplice.

10. EVIDENCE—*in criminal matters—forgery—of other crimes committed, when competent as res gestæ.* Upon the trial of a party indicted for forgery, evidence of another forgery committed by the prisoner, at the time of the commission of the offence for which he was on trial, is competent in identifying the party and the transaction and as *res gestæ.*

11. SAME—*handwriting—witness having seen the party write.* The rule is well settled, that a witness who obtained his knowledge of a person's handwriting by having seen him write, is competent to say whether another paper, or another word, or name, was in the handwriting of such person.

12. SAME—*the fact that witness has seen the party write but once, does not affect his competency.* And the fact that such witness had seen the party write but once, does not go to the competency or admissibility of his evidence, but only to the weight which should be given to it by the jury.

WRIT OF ERROR to the Recorder's Court of the City of Chicago; the Hon. E. VAN BUREN, Judge, presiding.

The opinion states the case.

Mr. J. P. WALKER, for the plaintiff in error.

Mr. W. K. McALISTER and Mr. CHARLES H. REED, for the people.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The plaintiff in error was convicted, at the June term, 1867, of the Recorder's Court of the city of Chicago, of forging a bank check, and sentenced to the penitentiary for six years.

He has brought the case here by writ of error, and alleges that the indictment is substantially and fatally defective, and no legal conviction could be founded on it.

The indictment is in the usual form, and alleges that the prisoner did, on the twenty-second day of September, in the year of our Lord one thousand eight hundred and sixty-six, in said city of Chicago, in the county and State aforesaid, unlawfully, feloniously and falsely make, forge and counterfeit, a certain bank check for the payment of money, which said false, forged and counterfeit bank check, is in the words and figures following, to-wit: (setting out a copy of the instrument), with the intent to damage and defraud one Charles H. Beckwith, contrary to the statute, and against the peace and dignity of the same people of the State of Illinois.

This indictment describes the offence declared forgery by section 73 of the criminal code; and by section 162 of the same code ,it is provided, that every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of this code, or so plainly, that the nature of the offence may be easily understood by the jury; and section 163 provides, that all exceptions which go merely to the form of an indictment,

must be made before trial, and no motion in arrest of judgment or writ of error shall be sustained for any matter not affecting the real merits of the offence charged in the indictment.

The defect in this indictment is alleged by the prisoner's counsel to consist in the omission of the averment, that the check was stamped, in pursuance of the act of Congress of 1865, and that without a stamp it is void under that act, and he insists a forgery cannot be predicated of an instrument void in law.

We do not so understand, and have so decided in two cases, that the act of Congress providing for stamping, declares them void if they have no stamp, but only if the omission to stamp them was with the intent to evade the provisions of the act; and we went still further, and held it was not within the constitutional competency of Congress to declare what should, or should not, be a valid instrument in a State, or what should be evidence in the courts of justice of the States; that while admitting the power to lay a tax in the shape of a stamp duty, a failure to affix the stamp could only be visited upon the offender by subjecting him to the penalty provided by the act. *Latham* v. *Smith*, 45 Ill., 29 ; and *Craig* v. *Dimock, et al., post* p. 308. We do not believe Congress, by the act in question, intended to interfere with the criminal laws of any of the States, but it was for revenue purposes solely, and the party offending was made subject to a heavy penalty.

It is said by the counsel for the people, that the check had, in fact, a stamp upon it and was so proved on the trial.

With the views we entertain of the question, we should be inclined to hold, that it was an immaterial fact, and the conviction would be good without such proof, if the check was proved to be false and forged, and made with the intent charged.

The next objection made by the prisoner's counsel is, that as the check on its face purports to be drawn by an agent, the

indictment should allege the fact, and the authority of the agent to draw it.

The check purports to be signed " C. H. Beckwith," with the word " Randolph " underneath. The offence charged is forging a check with Beckwith's name to it, to defraud him, and it does not enter into the essence of the charge that another man signed it by the authority of Beckwith. It is usher'd to the public as a check signed by Beckwith; it is alleged it was false and forged and made with the intent to damage and defraud Beckwith. If the party had no authority to draw the check in Beckwith's name, he might not be injured by it; but whether he had or not, is to be established on the trial. . We do not remember a case, and we have not been referred to one, where, in the indictment for forging a paper made by an agent in the name of his principal, it was held necessary to aver the authority of the agent, or to aver it was so drawn; setting out the check in *hæc verba*, with an allegation it was made with intent to defraud the party whose name is signed to it, is all that is necessary under our code of criminal procedure.

In the case cited, of *Gutchins* v. *The People*, 21 Ill., 642, the instrument set out in the indictment was one which could not, by the laws of this State, be valid, if genuine. This case is very different. Is it not plain that Beckwith could be damaged by this check if uttered? The word " Randolph " does not explain itself; it may be without explanation, a check word, or the name of the street in which Beckwith did business; at any rate, it requires parol evidence to explain its meaning. It appears to be Beckwith's own signature, and the averment is sufficient, that the check purported to have been drawn by him, that it was false and forged, and made to defraud the man whose signature appeared to the check.

These objections go to the motion in arrest of judgment, and as we do not deem them valid, the motion in arrest was properly overruled. The offence was stated in the terms and

language of the code, and so plainly that the nature of it could be easily understood by the jury. *Mohler* v. *The People*, 24 Ill., 26; *Chambers* v. *The People*, 4 Scam., 351.

It is complained by the prisoner's counsel that the court did not grant a new trial, for the reason, first, that the case, as alleged and charged in the indictment, was left unproved in its entire scope and meaning by the evidence.

This reason is predicated upon a supposed variance between the check described in the indictment, and the one given in evidence.

The first answer to this is, that the original check was lost or destroyed, and a copy went in by consent of prisoner's counsel, and, as no objection for variance was made on the trial, it is too late to make it on error. *Pearsons* v. *Lee*, 1 Scam., 193.

The variance consisted in the omission of the figures denoting the number of the check, and of the letter " C " attached to or written under " Randolph."

In a prosecution for counterfeiting bank notes, it has never been held necessary to set out the marks and cyphers, ornaments, devices, or mottoes on bank notes, and this court held, in the case of *Quigley* v. *The People*, 2 Scam., 301, that on the trial of an indictment for having in possession a forged bank bill, with intent to utter and pass the same, in which the bill was set out in *hæc verba*, but the letter " C " was omitted, and the bill introduced in evidence had this letter upon its face, it was held there was no variance.

The prisoner's counsel contends, second, that the case was left unproved in another respect. That it was not proved that Randolph had any authority to sign Beckwith's name to any check.

On this point, Randolph stated on his examination, that he was cashier for Beckwith, who was a wholesale grocer, and that he was in the habit of signing his name to the drafts of the company, and that Beckwith kept his accounts in the First

National Bank. It was for the jury to decide on these facts, if the authority to draw was proved. The evidence may not go to his authority to draw drafts, but he said he was in the habit of doing so, and if permitted by Beckwith, authority would be presumed in the absence of any counter evidence.

The prisoner, by his counsel, further insists, that the forgery was left unproved, for the reason that the only witness to the fact of forgery was Mooney, and that he was a self-acknowledged and self-condemned accomplice of the real forger, whoever he was, and that, in his statement that the prisoner was the forger, he was not corroborated by one word or fact of legal testimony.

Counsel for the prisoner, under this head of objection, admits that in strict law, the jury may convict upon the uncorroborated testimony of an accomplice, but denies that in practice it is ever allowed to be done.

The doctrine may be all true, and respectable authority is vouched, that a conviction should not be had on the uncorroborated testimony of an accomplice, and that, too, in material points, but that the witness is an accomplice must be clearly shown. All the cases cited by the prisoner's counsel on this head, show that the witness was "art and part" in the commission of the crime, but we fail to discover any evidence that Mooney was *particeps criminis*. If his statements are to be taken as true, and we do not see why they should not be, he was the dupe of the prisoner and not an accomplice. An accomplice is defined to be one who is in some way concerned in the commission of a crime, though not as a principal, and this includes all persons who have been concerned in its commission, whether they are considered, in strict legal propriety, as principals in the first or second degree, or merely as accessories before or after the fact. 4 Bl. Com., 331; 1 Phil. Ev. 28. Another definition of an accomplice is, one of many equally concerned in a felony, the term being generally applied to those who are admitted to give evidence against

their fellow criminals for the furtherance of justice which might otherwise be eluded.

There is no evidence that Mooney was a fellow criminal. He had not been accused of being in that relation to the prisoner, or arrested for complicity, and nothing was shown upon the trial to implicate him in any manner, except the fact that he took the check to the bank, received the money on it and paid it over to his employer, he all the while supposing the check was genuine. He only became suspicious of the conduct of the prisoner, when, on the same day, he requested him to get the Gardner check cashed. It was then the *denoue-. ment* occurred, and a full disclosure was made by the prisoner of his wicked avocation. The fact that Mooney did not then denounce the prisoner to the authorities, is the only circumstance that raises the suspicion that he was a confederate and an accomplice. But admit he was an accomplice, the law is well settled that a jury may find a verdict upon the testimony of one in that position, if he is not corroborated.

This question was discussed by this court in the case of *Gray* v. *The People*, 26 Ill., 344. One Porter was the principal witness against Gray, the prisoner, and Van Allen, who were indicted for burglary and larceny, and he stated on his examination, that he was one of the men who committed the burglary, and the prosecutor admitted that Porter was an accomplice, and that he had been separately indicted for the offence, but had not been arraigned, nor had he pleaded to the indictment. The circuit court overruled the objection, made by the prisoner's counsel, to his testifying, and an exception was taken. The cause came to this court on this exception.

Here it was insisted that Porter was an approver, and disqualified by the seventeenth section of the criminal code, which declares that approvers shall not be allowed to give testimony. After defining who is an approver, the court said: " Porter was in no sense an approver. He was not indicted with Gray and Van Allen. He was an accomplice, and being such,

turned State's evidence, no doubt, with the hope of escaping a prosecution. The evidence of such persons is, in general, admissible against the prisoner on trial. Hawkins, in his Pleas of the Crown, book 2, ch. 46, sec. 94, says : The rule is founded on necessity, since, if accomplices were not admitted, it would frequently be impossible to convict the greatest offenders."

In this case, it was also objected that the testimony of the accomplice was not corroborated. This, the court said, was no objection, and referred to a case tried before Justice BULLER, in which, on reference to the twelve judges, they were unanimously of opinion that an accomplice alone is a competent witness, and if the jury, weighing the probability of his testimony, think him worthy of belief, a conviction, supported by such testimony alone, is perfectly legal, referring to *Atwood's case,* 1 Leach, 464. In *Jones' case,* 2 Campbell, 132, Lord ELLENBOROUGH observed, "That judges in their discretion, will advise a jury not to believe an accomplice unless he is confirmed, or only in so far as he is confirmed; but, if he is believed, his testimony is unquestionably sufficient to establish the facts to which he deposes. *Commonwealth* v. *Bosworth,* 22 Pick., 397; *Same* v. *Savory,* 10 Cushing, 535; and this seems to be the more modern and approved doctrine. It is a matter of discretion with the court to advise, rather than a rule of law. 1 Phil. on Ev., 34-39; McNally on Ev., 197.

If a jury believe the testimony of an accomplice, who may have been induced to make disclosures, from remorse, or from any other motive, why should they not be allowed to credit him? Is he in a position different from any other witness whose credibility is to be inquired into by the jury? We can see no real difference.

It is further objected by the prisoner, that the court below erred in admitting the testimony of Mooney in reference to the Gardner check.

This objection is made on the hypothesis that Mooney was an accomplice of the prisoner, and the case of *Kinchelow* v. *The State*, 5 Hump., (Tenn.) 9, cited as in point.

In that case, the only witness against the prisoner was an accomplice in the crime, and the court held he could not be permitted, with a view to corroborate his statements, to give evidence of other larcenies proposed and planned by the prisoner at the time of the commission of the larceny for which he was indicted.

We think the case was well decided, but fail to see its applicability to this case, Mooney not standing in the position of an accomplice. He was a witness for the prosecution, no charge existing against him of any complicity in the crime with which the prisoner was charged.

We are of opinion, the evidence in regard to the check on Gardner & Co., which the witness refused to take, and which aroused his suspicions that the Beckwith check was not right, and which caused the development of the whole transaction, and of the character of the prisoner, was competent, as identifying the party and the transaction, and as *res gestæ.* The mode of operating was, at the time, explained by the prisoner to the witness; how he obtained a genuine check from Beckwith by purchasing a small quantity of tobacco, giving a bank bill of one hundred dollars in payment, and, at his own suggestion, taking a check for the difference. The prisoner then had in his possession a check forged on F. B. Gardner & Co., for three thousand dollars, and a genuine one for eighty dollars, and he went on to explain to the witness, in what manner he got the Gardner check, and getting a new stamp, which accorded with the mode he pursued in getting the Beckwith check. This evidence was not for the purpose of proving the prisoner guilty of another felony, in forging the check of Gardner & Co., but for the purpose of identifying him, and giving character to the entire transaction.

21—47TH ILL.

As put by the peoples' attorney, if a forger have two forged checks in his possession at the same time, and he admits that he accomplished the crime by the same identical means, although these forgeries were committed on separate parties, still the crimes are connected, and form part of the transaction—a part of the *res gestæ.*

It is further complained by the prisoner, that the court admitted in evidence against him, the registers of the "Briggs House," and "Adams House."

These "houses" are understood to be public hotels in the city of Chicago, and on the register of the "Briggs House," under date of Saturday, September 15, 1866, was the name " J. B. Bruce," proved by the book-keeper, who also proved that this Bruce left that house on the 20th of September, 1866, for the "Adams House."

The keeper of the billiard room and bar room of the "Adams House" produced and proved the register of that house, which contained a name, "Alfred Bruce," under date of Thursday, September 20, 1866. This witness also stated that in September, 1866, he was the keeper of the billiard and bar room of this house, and saw the prisoner there, but was able to identify him by his small feet alone. These registers, against prisoner's objection, were duly proved, and were put in evidence.

Two experts were then called by the prosecution, who gave it as their opinion that the name "J. B. Bruce," on the register of the Briggs House, and that of "Alfred Bruce," on the Adams House register, were in the same hand-writing.

Calvin D'Wolf and T. B. Brown, who had seen the prisoner sign his name to the recognizance he had entered into for his appearance in this cause, testified that the names on the hotel registers, and the signature to the recognizance, were in the prisoner's hand-writing.

And in this connection, the prisoner further complains that here was proof allowed of hand-writing by comparison, which was not legal.

We will consider these objections together. The object of this testimony was to show that the prisoner was at Chicago about the time the forged check bore date.

Mooney stated, on his examination, that the prisoner had been introduced to him at the Continental Hotel in Philadelphia, by one Clark, as Mr. Bruce; that he had received a letter from him signed "J. B. Bruce," inviting him to come to Chicago and be a clerk for him.

It is proved that the name "J. B. Bruce" is found on the register of the Briggs House on the 15th of September, 1866; that he left that house for the Adams House on the 20th, and the name "Alfred Bruce" is found on the register of that house, under that date. These experts, Dox and Tolman, were not introduced to prove the hand-writing of the prisoner by comparison, but only to prove that the names "J. B. Bruce" and "Alfred Bruce" were written by the same person. The object of the prosecution was to show the same person wrote both names, and the evidence of experts is always received for such purpose. Neither of these experts pretended to say by whom the names were written, but merely that they were written by the same person.

D'Wolf and Brown had seen the prisoner write, and from the knowledge of his hand-writing thus acquired, they gave it as their opinion, the entries on the hotel registers and the signature to the recognizance, which they had seen the prisoner place there, were in the same hand-writing.

The fact that D'Wolf and Brown had seen the prisoner write but once, does not go to the competency or admissibility of their evidence, but only to the weight that should be given to it by the jury. They had seen the prisoner write, and were clearly competent to say, having obtained a knowledge of his handwriting in this way, whether another paper, or another word or name, was in the same hand-writing. 1 Greenleaf Ev., 690, 691; 1 Phil. on Ev., 491.

Here proof was made by D'Wolf and Brown of the prisoner's hand-writing, not by a comparison of hands, but by having actually seen him write. They were at liberty to refresh their recollection by looking at the signature to the recognizance which they had seen the prisoner make, and then give their opinion as to the entries on the hotel registers. We see no error here.

The remaining objection by the prisoner is, that the court excluded, as evidence on his behalf, a receipt executed by one George Randolph, for board in Cleveland, Ohio, and dated Sept. 28, 1866. The receipt purported to be for the board of the prisoner at the house of Randolph, in Cleveland, from Sept. 4 to September 28, 1866.

Randolph was on the stand, and had testified, and so had three other witnesses for the prisoner testified, that he had been all the time, from the fourth to about the 28th of September, at the house of Randolph, confined by rheumatism, and on going away, Randolph had given him a receipt.

Now, as all this evidence was in, we cannot perceive how it could have aided the prisoner the slightest to have the receipt go in. It did not add a particle to the force of the testimony of all these witnesses, that the prisoner was at Cleveland, confined with rheumatism at Randolph's house, from the fourth to the twenty-eighth of September and its rejection could not have injured his cause in the least.

In looking through this entire record, we cannot but be of the opinion that the prisoner has had a fair trial, and cannot find that any rule of law has been improperly applied to him, or that he has been deprived of the benefit of any and every rule of law that could be invoked in his behalf. We find no such errors as have been assigned, and, consequently, must affirm the judgment.

*Judgment affirmed.*