JOHN COLLINS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa May 14, 1881.*

1. WITNESS—*accomplice.* An accomplice is a competent witness, and a conviction may be had upon his uncorroborated testimony, if it satisfies the jury beyond a reasonable doubt; but courts, in their discretion, may advise a jury not to believe an accomplice unless he is confirmed, or only in so far as he is confirmed. It is a matter of discretion with the court to so advise, rather than a rule of law.

2. SAME—*accomplice made competent by statute in all cases.* Under sec. 6, chap. 38, Rev. Stat. 1874, an accomplice is made a competent witness in all cases, whether jointly indicted or not, and although the charge may still remain against him. His offence goes only to his credibility.

3. PRACTICE—*evidence in chief after party has closed.* The order of the admission of evidence is largely discretionary with the trial judge. The admission of evidence for the people in a criminal case, after the close of the defendant's examination of the witnesses, which is properly evidence in chief, where the defendant is not denied the right to rebut such new evidence, is no ground for reversing a judgment of conviction.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. E. B. MCCLANAHAN, and Mr. W. S. FORREST, for the plaintiff in error:

Charles Lacomb, upon whose uncorroborated testimony Collins has been convicted, was not a competent witness, because, first, the record shows he was an accomplice; second, that he was jointly indicted with Collins in this case, and was arraigned and plead not guilty; and, third, that the record shows him to have been heretofore convicted of an infamous crime.

"Accomplices in guilt, not previously convicted of any infamous crime, and not jointly indicted, are competent witnesses against the accused on trial." Rev. Stat. 1874, p. 405, sec. 426. See, also, *Gray* v. *The People,* 26 Ill. 347; *Cross* v. *The People,* 47 id. 153; *Rafferty* v. *The People,* 72 id. 37.

A joint defendant can not be a witness for or against the others, even on a separate trial, till the case is disposed of as to him, by a conviction, or acquittal, or by a *nolle prosequi.* 1 Bish. Crim. Prac. (3d ed.) 1166; *Rex* v. *Howland,* 1 Ryan & Moody, 401; Cases Temp. Hardwicke, 163; *King* v. *Ryan et al.* Crown cases, Jebb, p. 5.

The old law of England was in accord with the *dicta* on this subject found in Illinois Reports; but the law in England, since the beginning of this century, has been, that a verdict will not be permitted to stand which is sustained only by the evidence of an alleged accomplice, uncorroborated, as to the identity of the accused. *Rex* v. *Addis,* 5 Car. & P. 388; *Rex* v. *Webb,* id. 595; *Rex* v. *Moore & Spindle,* 7 id. 272; *Regina* v. *Farles,* 8 id. 106; *Regina* v. *Dyke,* 8 id. 261.

Mr. JAMES McCARTNEY, Attorney General, for the People:

Even the uncorroborated testimony of an accomplice will sustain a conviction. *Cross* v. *The People,* 47 Ill. 152; *State* v. *Brown,* 3 Strobh. 508; *Stocking* v. *State,* 7 Ind. 326; *Dick* v. *State,* 30 Miss. 593; *State* v. *Stebbins,* 29 Conn. 463; *State* v. *Watson,* 31 Mo. 361; *Steinham* v. *United States,* 2 Paine, C. C. 168; *Parsons* v. *State,* 43 Ga. 197; *Lee* v. *State,* 21 Ohio St. 151; *Lopez* v. *State,* 34 Tex. 133; *Phillips* v. *State,* 34 Ga. 502; *Sumpter* v. *State,* 11 Fla. 247; *McKenzie* v. *State,* 24 Ark. 636; *People* v. *Garnett,* 29 Cal. 622; *State* v. *Schlagel,* 19 Ia. 169; *State* v. *Cook,* 20 La. Ann. 145; *Foster* v. *People,* 18 Mich. 266; *State* v. *Potter,* 42 Vt. 495; *People* v. *Haynes,* 55 Barb. 450.

Lacomb was not, in fact, an accomplice in the burglarious act. It is true that he was indicted with the others, but in the act of burglary it is not claimed that he was a participant, therefore he was not really an accomplice, in the meaning of the law, as applied to the giving of evidence. *Minor* v. *State,* 58 Ga. 551; *Peeler* v. *State,* 3 Tex. App. 533; *Commonwealth* v. *Elliott,* 110 Mass. 104; 1 Greenlf. on Ev. sec. 379.

The degree of credibility to be given to the testimony of an accomplice, is a question for the jury alone. If the jury choose to believe such evidence, they have a right to do so. *The People* v. *Costello,* 1 Denio, 83; *Rex* v. *Dawber,* 3 Stark. 34; Roscoe's Crim. Ev. 127–129.

In the following cases it is held, directly, that the testimony of an accomplice is to be weighed with caution; but there is no rule that the jury must not believe it without corroboration: *White* v. *State,* 52 Miss. 216; *Fitzcox* v. *State,* id. 923; *State* v. *Jones,* 64 Mo. 391; *State* v. *Betsall,* 11 W. Va. 703; *Solander* v. *People,* 2 Col. T. 48; *Keech* v. *State,* 15 Fla. 591; *George* v. *State,* 39 Miss. 579; *Strawhem et al.* v. *State,* 37 id. 422; *Lee* v. *State,* 51 id. 566. See, also, *Lindsay* v. *People,* 63 N. Y. 143; *Carroll* v. *State,* 5 Neb. 31; *Brown* v. *State,* 18 Ohio St. 509.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Herman Young, Alexander Lacomb, and plaintiff in error, were jointly indicted, by the grand jury of Cook county, for burglariously entering the store of Cohn, Wampold & Co., in the city of Chicago, on the night of the 11th of May, 1879, and stealing therefrom certain goods. Young and plaintiff in error were placed upon their trial, and, by the verdict of a jury, they were found guilty, and the punishment of each was fixed at ten years' confinement in the penitentiary. The court awarded plaintiff in error a new trial, but as to Young judgment was entered upon this verdict. Subsequently, plaintiff in error was placed upon trial under the indictment, alone, and he was again found guilty, by the verdict of the jury, and his punishment, this time, was fixed at twelve years' confinement in the penitentiary. The court overruled motions for a new trial and in arrest of judgment, and entered judgment upon this verdict. This writ brings before us, for review, the record of that judgment.

The only evidence directly and positively connecting plaintiff in error with the burglary, is that furnished by the testimony of Lacomb, his co-defendant.

No *nolle prosequi* has been entered as to Lacomb, and he has never been tried under the indictment. He has pleaded not guilty, and the issue thus presented is still pending. It is therefore insisted that he was incompetent as a witness.

The mere fact that Lacomb was an accomplice, very clearly did not render him incompetent to testify. *Cross* v. *The People*, 47 Ill. 152; *Gray* v. *The People*, 26 id. 344; *Earll* v. *The People*, 73 id. 329. But it is insisted that the fact that he was jointly indicted with plaintiff in error, and the case was, at the time, undisposed of as to him, did.

We do not deem it necessary to inquire what was the common law in this respect, since we are of opinion the question is conclusively settled against plaintiff in error by our statute.

It provides, (Rev. Stat. 1874, p. 410, § 6,) "No person shall be disqualified as a witness in any criminal case or proceeding by reason of his interest in the event of the same, as a party or otherwise, or by reason of his having been convicted of any crime; but such interest or conviction may be shown for the purpose of affecting his credibility: *Provided, however,* that a defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

If, at common law, Lacomb would have been an incompetent witness, it must have been because he was interested in the event of the suit, and, under the above language, it is wholly unimportant whether that interest arose from his being a party, or otherwise, for in either event he is rendered competent. The *proviso* adds force to this view. It shows that it was intended that *all* defendants should be *allowed* to testify, for, otherwise, the *proviso* was wholly unnecessary.

Under that section, a defendant is unquestionably entitled to have the benefit, for what it is worth, of the evidence of a co-defendant; and the same right is equally clearly given to the State. The infamy arising from convicted guilt, and the interest resulting from being a party to the same case or proceeding, may now be considered, for the purpose of determining what credence should be given to the testimony of the witness, but they no longer furnish any ground for excluding his testimony.

The effect to be given to the evidence of an accomplice, presents a different question for our consideration. In *Gray* v. *The People, supra,* in reply to the objection that had there been urged in argument that the testimony of the accomplice was uncorroborated, it was said, "this is no objection," and that "whether the evidence produced to confirm

the accomplice is satisfactory or not, is a question which the jury has to determine."

The same thing was repeated in *Cross* v. *The People, supra*. In both cases the language of Lord Ellenborough, in *Jones' case*, was quoted: "That judges, in their discretion, will advise a jury not to believe an accomplice unless he is confirmed, or only in so far as he is confirmed; but if he is believed, his testimony is unquestionably sufficient to establish the facts to which he deposes." And in the latter case it is added, after citing *Commonwealth* v. *Bosworth*, 22 Pick. 397, and *Commonwealth* v. *Savory*, 10 Cush. 535: "And this seems to be the more modern and approved doctrine. It is a matter of discretion with the court to advise, rather than a rule of law. 1 Phil. on Ev. 34, 39; McNally on Ev. 197. If a jury believe, from the testimony of an accomplice, who may have been induced to make disclosures, from remorse, or from any other motive, why should they not be allowed to credit him? Is he in a position different from any other witness whose credibility is to be inquired into by the jury? We can see no real difference."

It is true, as objected, what was said in this case was not, in the view taken by the court of the evidence, essential to a decision of the case,—but if it be sound law, this is unimportant.

Counsel say: " The old law of England was in accord with the *dicta* on this subject found in Illinois Reports. But the law in England, since the beginning of this century, has been, that a verdict will not be permitted to stand which is sustained only by the evidence of an alleged accomplice, uncorroborated, as to identity of the accused."

This, we think, is a misapprehension. As late as the 24th of November, 1855, in the Court of Criminal Appeal, it was said by Jarvis, Ch. J., in *Regina* v. *Stubbs*: "It is not a rule of law that accomplices must be confirmed in order to render a conviction valid, and it is the duty of the judge to tell the jury that they may act on the

unconfirmed testimony of an accomplice; but it is usual in practice for the judge to advise the jury not to convict on such testimony alone, and juries generally attend to the judge's direction, and require confirmation. But it is only a rule of practice." And this was concurred in by all the members of the court. 33 English Law and Equity, 551.

In the earlier case of *Rex* v. *Hastings*, 7 Car. & Payne, 152 (decided in 1835-6), Lord DENMAN said: "I consider, and I believe my learned brothers agree with me, that it is altogether for the jury, and they may, if they please, act upon the evidence of the accomplice without any confirmation of his statement. But we would not, of course, be inclined to give any great degree of credit to a person so situated." See, also, Joy on the Evidence of Accomplices, 20 Law Library, 5, *3 and 11, *16. The same doctrine is followed in *State* v. *Potter*, 42 Vt. 495; *People* v. *Costello*, 1 Denio, 83; *Stocking* v. *State*, 7 Ind. 326; *Johnson* v. *The State*, 2 id. 652; *Dawley* v. *The State*, 4 id. 128; *State* v. *Stebbins*, 29 Conn. 463; *State* v. *Watson*, 31 Mo. 361; *Sumpter* v. *State*, 11 Fla. 247.

What was said in *Cross* v. *The People*, *supra*, it is thus seen, is abundantly sustained by authority, and no reason is perceived why it should be, in the least, departed from or modified.

The tendency with us, at present, is to arbitrarily exclude as little as possible, but to listen and give credence to whatever tends to establish the truth. The innocent should not be convicted, nor should the guilty escape punishment, by reason of any merely arbitrary rule preventing the free and full exercise of the judgment as to the truthfulness or untruthfulness of testimony, and the reliance to be placed upon it in the trial of cases. In many, probably in most, cases, the evidence of an accomplice, uncorroborated in material matters, will not satisfy the honest judgment beyond a reasonable doubt—and then it is clearly insufficient to authorize a verdict of guilty. But there may frequently

occur other cases, where, from all the circumstances, the honest judgment will be as thoroughly satisfied from the evidence of the accomplice of the guilt of the defendant, as it is possible it could be satisfied from human testimony,—and in such case it would be an outrage upon the administration of justice to acquit.

It is not true that Lacomb was totally uncorroborated. Young, on all hands, is admitted to have been guilty. He so testifies himself, and there is no pretence to the contrary. Although, at the time this burglary was committed, he was less than twenty-three years old, he was a confirmed and desperate criminal, by his own showing. He was brought from the penitentiary to testify on behalf of plaintiff in error, and, were he to be believed, the jury should unhesitatingly have acquitted plaintiff in error; but they were not compelled to believe him, and we think they very wisely disregarded his testimony, as unworthy of credit. He admits that, at the age of not quite sixteen years (in 1872), he was convicted and sent to the reform school for one year, for larceny. Two years afterwards (in 1874) he was convicted of burglary, and sent to the penitentiary for eighteen months. In 1876 he was again convicted of larceny, and sent to the penitentiary for eighteen months. After serving this term, he went to Cincinnati, and was there locked up for sixteen months, for vagrancy. Upon completing this service, he returned to Chicago, and then, as he says, first made the acquaintance of plaintiff in error. This was in the latter part of November or first of December, 1878. Thenceforth, it appears, plaintiff in error and Young were quite intimate. In January, 1879, they were arrested and lodged in jail for a short time on the charge of a joint burglary, and in February, 1879, they were again arrested on a charge of jointly stealing cigars; but they were not convicted of either of these charges.

A short time before the burglary of Cohn, Wampold & Co.'s store, plaintiff in error and Young rented a room together, at No. 234 Illinois street, informing the proprietress that they

were in the liquor business on South Water street, which was false. They continued, as the proprietress says, to jointly occupy this room, at irregular hours, sometimes in the day and sometimes in the night, returning, when absent, at different hours, from early in the morning until late at night, until about a week or ten days before they were arrested, (which appears to have been Thursday, the 15th of May, 1879, the burglary having been committed on the night of the preceding Sunday, the 11th,) and then plaintiff in error left the room and went to reside at No. 112 North Clark street, with a woman known as Kate Curry. Young remained at No. 234 Illinois street, and plaintiff in error continued at No. 112 North Clark street, until they were, respectively, arrested.

During all the period of the acquaintance and intimacy of plaintiff in error with Young, he is not shown to have had any regular business. After plaintiff in error removed to No. 112 North Clark street, Young and he continued to visit each other frequently, and on Sunday morning, the 11th day of May, 1879, (the morning immediately preceding the night of the burglary), plaintiff in error and Young left No. 234 Illinois street, together, at the hour of about six o'clock. Young returned to the room about half-past eleven o'clock that night (which is shown to have been after the hour the burglary was committed). On the next morning, (Monday, the 12th,) at about nine o'clock, plaintiff in error drove in a buggy to No. 234 Illinois street, and Young went away with him.

The goods taken from Cohn, Wampold & Co.'s store, consisted of silk and cotton velvets, cloths, flannels, button hole twists, etc. The bulk of them were taken and left with a tailor named Lundquist, but about five yards of the silk velvet, and some of the button hole twists, were found in the possession of Kate Curry, in the room occupied by her and plaintiff in error.

On the morning of Thursday, next after the burglary, at the early hour of five o'clock, Kate Curry called and rang the bell at No. 234 Illinois street, and inquired for plaintiff in error. She was carrying a roll or bundle, which she says was this silk velvet, and appeared excited. A few hours later, Young and she were found alone together, in the room occupied by her and plaintiff in error at No. 112 North Clark street, and were arrested, and the velvet was there taken by the officer. Some time after this, on the same day, plaintiff in error was arrested as he was entering Young's room, No. 234 Illinois street. After their arrest, Lundquist was taken in their presence, and said, as the witnesses think, loud enough for them to hear, "these are the two men who caused me this trouble," to which they made no reply.

Young admits that plaintiff in error was with him twice before the robbery, at Lundquist's, once in January and once in April, and that on the first of these occasions he had with him cigars, which he (Young) had taken from a store, and which he left with Lundquist. He denies that plaintiff in error knew his business there, and says that he just went along for company. Young and Kate Curry say that Young gave her the velvet, without the knowledge of plaintiff in error; and yet they say they were not intimate, in any way, with each other, and there was no motive for the gift.

There is evidence, also, tending to prove an *alibi,* but it is not of that clear and convincing character that we can say a jury ought to have regarded it.

Leaving entirely out of view Lacomb's evidence, the circumstances point with almost conclusive effect to plaintiff in error as a party in guilt with Young.

That Lacomb was guilty, also, is confessed. That he is now interested in the conviction of plaintiff in error, is, doubtless, true; but it is not apparent, at the outset, why he should have charged plaintiff in error falsely with the crime. If, as Young says, George Smith, and not plaintiff in error, was associated with him in the burglary, it is not

perceived why Lacomb's end would not have been equally subserved by saying that, as well as by saying what he has said. It is true, at first he denied all knowledge of the robbery, and of Young and plaintiff in error; but soon after, and before it appears there was any examination, he told the story substantially as he does now, and went and showed where the goods were. We have no doubt that Lacomb, in his over-anxiety to make his own conduct in this matter appear innocent, has deviated in some respects (unimportant, however, as affects the issue here,) from the truth; and it is shown that his memory is either unusually treacherous, or that he is not willing to acknowledge the truth in regard to his association in the days of his boyhood with Young.

Lacomb is, undoubtedly, as well as Young, a thief. He has been convicted of larceny, and served a short term in the penitentiary. It was precisely because he was known to have been a thief, that he was let into the knowledge of what he has testified to. Young and plaintiff in error had no use for an honest man to assist in getting the goods away. They undoubtedly selected Lacomb because they thought he was of their kind, and could be trusted.

We must recognize the fact, in considering cases of this kind, that honest men and women rarely, and then only casually, are in the company of thieves and burglars, and are still more rarely admitted into their confidence, and hence that witnesses of their guilt, of necessity, must very often be taken from those who are no better than themselves.

The statute, as we have seen, has removed the disability formerly imposed by the conviction for an infamous offence, and the jury are left to judge, with the best lights before them, how much of the story of such people is true, and how much is false. We have no doubt the jury were right in believing in the guilt of the plaintiff in error,—not simply because Lacomb has so testified, but because all the circumstances, when carefully considered, combine in marking him as Young's associate in the burglary.

Some objection was urged against the testimony of Geraty, on the ground that it was not rebutting. The order of the admission of evidence is largely discretionary with the trial judge. The defence were not denied the right to rebut any matter testified to by Geraty, which they claim was original testimony; and we can not, even conceding that it be true that some of his testimony was such as should have been given in chief, perceive the defendant has been injured. No such abuse of discretion is apparent as would require a reversal of the judgment.

The judgment is affirmed.

*Judgment affirmed.*