COMMONWEALTH *vs.* BERNARD DOMANSKI
(and four companion cases[1]).

Worcester. September 27, 1954. — December 21, 1954.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Practice, Criminal,* Exceptions: whether error harmful, what questions
 open; Argument by district attorney; Assignment of error; Ordering
 verdict; Sentence. *Evidence,* Failure to produce evidence, Admitted
 without objection. *Error,* Whether error harmful. *Jurisdiction,* Pris-
 oner in Federal custody, Raising question of jurisdiction. *Comity.*
 *Waiver. Witness,* Competency, Coindictee. *Breaking and Entering.*

At the trial of an indictment, an improper comment by the prosecutor
 in his argument to the jury on the failure of the defendant to testify
 was not prejudicial where the trial judge ordered the comment struck
 and later in his charge gave instructions, to which no exception was
 taken, that a defendant has a right not to testify and that no adverse
 inference may be drawn if he exercises that right. [69]
At the trial of an indictment at which the Commonwealth had intro-
 duced evidence incriminating the defendant, who did not testify nor
 present witnesses to testify in his behalf, a comment by the prosecutor
 in his argument to the jury on the defendant's failure to call wit-
 nesses was prejudicial where there was nothing to show that there
 were witnesses available to the defendant and, although the defendant
 seasonably objected and excepted to the comment, the trial judge took
 no action respecting it then or afterwards; and the exception must be
 sustained and a verdict against the defendant set aside. [70–71]
A statement by the prosecutor in his argument to the jury at the trial
 of an indictment that "the Commonwealth has no exceptions" was
 not incorrect as a statement of law and was not prejudicial to the
 defendant. [71]
A point not covered by an assignment of error is not open in this court on
 an appeal in a criminal case not a capital case tried under G. L. (Ter.
 Ed.) c. 278, §§ 33A–33G, as amended. [71]
The right of the United States, after first acquiring jurisdiction of one on
 charges for Federal offences, to retain jurisdiction to the exclusion of
 a State until its duty is fully performed and its jurisdiction exhausted

---

[1] The companion cases are Commonwealth *vs.* Theodore Green & others;
Commonwealth *vs.* Theodore Green & others; Commonwealth *vs.* Theodore
Green; Commonwealth *vs.* Frank Murray.

Commonwealth *v.* Domanski.

may be waived and consent given to trial of the defendant in the State courts for violation of State law. [73]

A Massachusetts court had jurisdiction to try a defendant for violation of Massachusetts law while he was in the custody of the United States marshal awaiting trial for Federal offences where it appeared that, pursuant to a writ of habeas corpus ad respondendum issued by the Massachusetts court, the marshal took the defendant to that court each day and returned him to jail when it adjourned, that at no time did Federal authorities object to this procedure, and that after the trial and before sentencing of the defendant an assistant United States Attorney appeared and stated that the United States had no objection to the sentencing provided the defendant would be made available to Federal authorities for trial. [71–73]

A defendant in the custody of the United States marshal awaiting trial for Federal offences when placed on trial in a Massachusetts court for violation of Massachusetts law was not entitled to raise the objection that the Commonwealth was interfering with the jurisdiction of the United States; such an objection was the right of the United States alone. [73]

The question of the competency of the principal witness for the Commonwealth at the trial of an indictment could not be raised as of right by a motion, presented by the defendant at the close of the Commonwealth's evidence, to strike out the testimony of the witness where the defendant knew of the alleged incompetency at the time the witness was called and his testimony was admitted without objection. [73–74]

At the trial of a defendant indicted with others, a coindictee who was not on trial was competent to testify for the Commonwealth under G. L. (Ter. Ed.) c. 233, § 20, as amended, although the indictment had not been disposed of as against him. [74–75]

It was proper to deny a general motion by the defendant that a verdict of not guilty be ordered at the trial of an indictment charging that the defendant "being armed with a dangerous weapon did assault" one "with intent to rob him" where the evidence in any event warranted a finding that the defendant committed the lesser offence of aggravated assault necessarily included in the charge made by the indictment. [75–76]

A finding of a breaking into a dwelling was warranted by evidence that shortly after intruders who had entered the dwelling left it a door which was usually locked was open and its lock was broken. [76–77]

An assignment of error to the denial of a motion for a directed verdict of not guilty at the trial of an indictment does not open in this court the propriety of the sentence imposed on the defendant. [77]

The competency of certain evidence admitted without objection by the defendant at the trial of an indictment was not considered by this court. [77]

INDICTMENTS, found and returned on May 16, 1952.

The cases were tried in the Superior Court before *Meagher*, J.

*Herbert F. Callahan*, for the defendant Domanski, submitted a brief.

*Paul T. Smith*, (*Reuben Goodman & Joseph T. Doyle* with him,) for the defendants Green and another.

*A. Andre Gelinas*, Assistant District Attorney, for the Commonwealth.

SPALDING, J.    The jury could have found these facts. On the night of November 25, 1951, four armed men entered the home of Joseph D'Amico on the second floor of a building at 281 Shrewsbury Street, Worcester, for the purpose of stealing $20,000 to $30,000 which, as they believed, was in the house.    A fifth man remained outside in an automobile.    While Joseph's wife, two daughters, and a son were held at gun point the intruders looked through an unlocked safe and a pocketbook but failed to find any money.    Attracted by the noise, Joseph's brother, Gerard, and Gerard's wife came down to Joseph's apartment from their apartment on the floor above.    Joseph's son and Gerard engaged in a struggle with two of the men.    During the struggle Gerard was hit over the head with a pinch bar and several shots were fired.    At this point one of the group, Domanski, fled to the street.    Joseph D'Amico, who had been in his bakery on the first floor of the building, heard the commotion and ran to the street.    Believing that some harm had come to his family, Joseph intercepted Domanski and attempted to stop him.    In the ensuing struggle, Domanski shot Joseph in the throat and got into the waiting automobile. Shortly thereafter the other members of the group ran out of the house, got into the automobile and, along with Domanski, made their escape.    Joseph's wound, although serious, was not fatal.

The defendants Green, Murray, and Domanski were indicted with others, including one Bistany, for assaulting Joseph D'Amico with intent to rob him, they being armed with a dangerous weapon; and for breaking and entering in the nighttime "a building, to wit: the dwelling house of Joseph D'Amico . . . with intent therein to commit larceny."    Green, Murray, and Domanski were also indicted

separately for carrying a pistol or revolver without lawful
authority or permission.

The three defendants were tried together to a jury on all
of these indictments and others which are not before us.
In all of the indictments verdicts of guilty were returned
against the defendants and consecutive sentences to the
State prison were imposed. All appealed, the cases having
been tried subject to the provisions of G. L. (Ter. Ed.)
c. 278, §§ 33A-33G, as amended.

1. The defendant Green's thirteenth and fourteenth as-
signments of error, which are the same in each of the cases
in which he was involved, relate to certain remarks by the
prosecutor in the course of his argument to the jury which,
it is urged, were prejudicial.

The defendant Green did not take the stand. In his
argument the prosecutor said, "If Green could have proved
to you that he was anywhere else except right here in
Worcester on that day, you would have had him here."
Counsel for Green objected and moved for a mistrial. The
judge impliedly denied the motion and ordered the remark
stricken. Counsel then asked the judge to instruct the jury
later with respect to the matter. No exception was taken.
Later in his charge the judge fully instructed the jury that
a defendant has a right not to testify and that no adverse
inference may be drawn if he exercises that right. No ex-
ception was taken to that portion of the charge. Despite the
argument of the Commonwealth to the contrary, the remark
was reasonably susceptible of being interpreted as a com-
ment on Green's failure to take the stand which, of course,
was improper. *Commonwealth* v. *Harlow,* 110 Mass. 411.
*Commonwealth* v. *Richmond,* 207 Mass. 240, 248–249. *Opin-
ion of the Justices,* 300 Mass. 620, 623–624. G. L. (Ter.
Ed.) c. 233, § 20. But in view of the manner in which the
judge dealt with the remark, first, by ordering it stricken,
and later by adequate instructions, to which no exception
was taken, Green's rights were adequately protected. *Com-
monwealth* v. *Richmond,* 207 Mass. 240, 250–251.

But immediately following the remark just discussed the

prosecutor said, "There was no defence presented by Mr. Green as to where he was. . . . You jurors have a right to take that into consideration." Counsel for Green objected and took an exception. The trial judge took no action with respect to it nor did he later refer to the matter in his charge. The Commonwealth argues that these remarks were intended as a comment on Green's failure to call witnesses, and we shall deal with the question on that footing.

It is settled that "where incriminating evidence has been introduced by the Commonwealth and explanations consistent with his innocence could be produced by the defendant through witnesses other than himself, more likely to be known to him than to the representatives of the government, and he does not call such witnesses, his failure in this respect is fair matter for comment, and is not within the protection of the Constitution. . . . The inference drawn by common sense and approved by the law is that such evidence if presented would be unfavorable to the defendant." *Commonwealth v. Peoples Express Co.* 201 Mass. 564, 581. *Commonwealth v. Clark,* 14 Gray, 367. *Commonwealth v. Harlow,* 110 Mass. 411. *Commonwealth v. Finnerty,* 148 Mass. 162, 167. *Commonwealth v. McCabe,* 163 Mass. 98, 102. *Commonwealth v. Spencer,* 212 Mass. 438, 451. *Commonwealth v. O'Rourke,* 311 Mass. 213, 222. But as Knowlton, J., observed in discussing this principle in *Commonwealth v. Finnerty, supra,* "If it did not appear that the defendant could easily call witnesses other than himself to explain . . . [the strong evidence of guilt introduced by the Commonwealth] if he were innocent, possible explanations might be conjectured, which might make his guilt doubtful" (page 167). Continuing, he observed that the principle of allowing comment on the failure of a defendant to call witnesses was one to be "applied cautiously, and with a strict regard for the rights of persons accused. The jury should ordinarily be instructed not to draw inferences from the neglect of a defendant to call witnesses, unless it appears to be within his power to call others than himself, and unless the evidence against him is so strong that, if

innocent, he would be expected to call them" (page 167). But the foundation for comment was lacking here. There was nothing during the course of the trial to suggest that Green had witnesses available who were not brought forward. Yet the argument of the prosecutor in effect asked the jury to draw an unfavorable inference from Green's failure to call witnesses. This was highly prejudicial. *Heina* v. *Broadway Fruit Market, Inc.* 304 Mass. 608, 611. The matter was seasonably brought to the attention of the judge who impliedly ruled that the argument was not improper, and no mention was made of it in the charge. Green was entitled, at the very least, to an instruction that this was a case in which the jury could not properly draw inferences from Green's failure to present a defence. In the circumstances Green did all that was necessary to preserve his rights and his exception must be sustained. *Doherty* v. *Levine*, 278 Mass. 418. *Heina* v. *Broadway Fruit Market, Inc.* 304 Mass. 608, 611. It follows that the verdicts against him must be set aside. It, therefore, becomes unnecessary to consider his other assignments of error. Questions raised by him which would be likely to arise on a retrial of the case will be discussed in considering the assignments of error of the other defendants.

2. The defendant Murray assigns as error (assignment 12) the fact that the prosecutor in his argument stated, "The Commonwealth has no exceptions." We think this statement, to which Murray excepted, was not as matter of law objectionable. It is difficult to see how it was relevant, and it would have been better left unsaid. But it was not incorrect as a statement of law and we cannot say that it was prejudicial. Murray challenges another statement made by the prosecutor, but there is no assignment of error relating to this point and we do not consider it. *Commonwealth* v. *Gale*, 317 Mass. 274, 277.

3. The defendants Domanski and Murray, hereinafter called the defendants, by their twelfth and sixteenth assignments respectively challenge the jurisdiction of the court to try them because, when brought to trial and thereafter,

they were in Federal custody. This question is raised by motions in arrest of judgment, which were denied by the trial judge subject to the defendants' exceptions.

It appears that when the defendants were placed on trial they were in the custody of the United States marshal for the District of Massachusetts awaiting trial on indictments for Federal offences. Pursuant to writs of habeas corpus ad respondendum from the Superior Court the marshal brought the defendants to court each day and at the adjournment of court they were returned by him to jail. At no time did Federal authorities object to this proceeding. After trial and before sentence an assistant United States Attorney appeared and stated that the United States had no objection to the sentencing of the defendants provided they would be made available to answer to Federal charges pending against them.[1]

Under our dual system of government probably nothing is better settled than the principle that the court which first takes jurisdiction of the subject matter of the litigation, whether this be person or property, retains it to the exclusion of the other until its duty is fully performed and the jurisdiction invoked is exhausted. *Taylor* v. *Taintor*, 16 Wall. 366, 370. *Covell* v. *Heyman*, 111 U. S. 176, 182–183. *Ponzi* v. *Fessenden*, 258 U. S. 254, 260. Thus, where a writ of habeas corpus is brought in a State court on behalf of a Federal prisoner in order to release him and thwart or nullify the proceedings in the Federal courts, the State court acquires no jurisdiction even though the prisoner is before that court in compliance with the writ. That proposition was settled beyond peradventure in Chief Justice Taney's great judgment in *Ableman* v. *Booth*, 21 How. 506.

---

[1] The statement was as follows: "It is the position of the United States government that I am authorized to state that while . . . the Federal government, does not concede that by the answering of the writ of habeas corpus and the production of these prisoners here that they have lost control — or they have released control of these prisoners for the purposes of sentence it is, from a practical viewpoint, the stand of the United States court of Massachusetts that we have no objection to the sentencing by this court of these defendants upon the understanding that they will be made available to the Federal authorities on proper writs of habeas corpus for trial on charges which are pending against them in the United States court."

But this rule does not mean that a prisoner in Federal custody may not on principles of comity be turned over to State authorities for trial. In other words the Federal government may, if it sees fit, waive its right to the exclusive jurisdiction of such a prisoner and consent to his being tried in a State court. And if that is done the prisoner has no standing to complain. *Ponzi* v. *Fessenden*, 258 U. S. 254, 265–266. We are mindful that in that case it was said that the authority to transfer a Federal prisoner to a State court for trial must be exercised with the consent of the Attorney General of the United States. It is not to be inferred that the assistant United States Attorney would have made the statement recited above without having been authorized by proper authority to do so. There is nothing to indicate that the defendants were in any way prevented from having a fair trial by the procedure adopted here. See *Ponzi* v. *Fessenden*, 258 U. S. 254, 260. Moreover even if it be assumed, arguendo, that the necessary consent of the United States to try the defendants in our court was lacking, the defendants can gain no advantage thereby. The United States alone may raise the objection to the interference with its rights. *Rawls* v. *United States*, 166 Fed. (2d) 532, 534 (C. C. A. 10). See *Powell* v. *Sanford*, 156 Fed. (2d) 355 (C. C. A. 5). The motions in arrest of judgment were rightly denied.

4. The principal witness for the Commonwealth was one Bistany, an accomplice of the defendants and a coindictee. At the time he testified he had not been tried and no disposition had been made of the indictments in so far as they affected him, and the Commonwealth did not move for trial against him. At the conclusion of the Commonwealth's case the defendants moved that his testimony be stricken and to the denial of their motions, subject to exceptions, they have assigned error. These assignments could be briefly disposed of on the ground that objections to the competency of a witness if known must be made before the testimony is given. *Commonwealth* v. *Green*, 17 Mass. 515, 536–538. *Donelson* v. *Taylor*, 8 Pick. 390, 392. *Shurtleff* v.

*Willard,* 19 Pick. 202, 212. *Benson* v. *United States,* 146 U. S. 325, 333. Wigmore on Evidence (3d ed.) § 486. The defendants knew all the facts pertaining to Bistany's alleged incompetency as a witness at the time he was called. After his testimony had been admitted without objection the question of its admissibility could not as of right be raised by a motion to strike. *Cummings* v. *National Shawmut Bank,* 284 Mass. 563, 568. *Solomon* v. *Dabrowski,* 295 Mass. 358, 360. *Commonwealth* v. *Doyle,* 323 Mass. 633, 634. But as the question is one of some importance in the conduct of criminal trials and is likely to arise on the retrial of Green, we shall deal with it on the merits. The argument of the defendants seems to be that at common law Bistany as a coindictee of the defendants and not having been taken out of the case by a plea of guilty or otherwise (see *Commonwealth* v. *Smith,* 12 Met. 238) was not a competent witness, and that he was not made competent by G. L. (Ter. Ed.) c. 233, § 20, which, so far as material, provides: "Any person of sufficient understanding, although a party, may testify in any proceeding, civil or criminal . . . except . . . Third, The defendant in the trial of an indictment, complaint or other criminal proceeding shall, at his own request, but not otherwise, be allowed to testify."

While at common law the authorities were not uniform on the point, the better and prevailing view was that an indictee not on trial was competent to testify for the prosecution at the trial of his coindictee. Wigmore on Evidence (3d ed.) § 580. *Benson* v. *United States,* 146 U. S. 325, 334. *State* v. *Barrows,* 76 Maine, 401, 407. *State* v. *Brien,* 3 Vroom, 414. *People* v. *Van Wormer,* 175 N. Y. 188, 193–194. *The Queen* v. *Payne,* L. R. 1 C. C. 349, 354. *Winsor* v. *The Queen,* L. R. 1 Q. B. 390. No decision of this court has been found which holds the contrary, although it appears to have been settled here and by the weight of authority elsewhere, for reasons which are not very convincing, that such a witness could not testify *on behalf* of his coindictee. *Commonwealth* v. *Marsh,* 10 Pick. 57. Wigmore on Evidence (3d ed.) § 580. The lack of authority on

the point is probably due to the fact that ordinarily the prosecution did not call such a witness to testify unless he had been taken out of the case by plea of guilty, nolle prosequi or otherwise, in which case there never was any doubt as to his competency. See *Commonwealth* v. *Smith,* 12 Met. 238; *Commonwealth* v. *Lammi,* 310 Mass. 159, 162; Wigmore on Evidence (3d ed.) § 580. But with the refinements of the rule at common law in a situation like the present we need not concern ourselves overmuch. Of course, the only reason that there was ever any question of the competency of an indictee to testify against a coindictee was due to his being a party in interest. But today the common law disqualification has been removed by G. L. (Ter. Ed.) c. 233, § 20, quoted above, and it would be contrary to the intent and purpose of that statute to perpetuate disabilities which stem from that disqualification. Courts elsewhere in dealing with statutes similar to ours have taken this view, and it has generally been held that, whatever the rule was at common law, an indictee not on trial is now competent to testify against his coindictee. *Benson* v. *United States,* 146 U. S. 325, 333–334. *Henderson* v. *United States,* 20 Fed. (2d) 90, 92 (C. C. A. 8). *Collins* v. *People,* 98 Ill. 584, 587–588. *State* v. *Barrows,* 76 Maine, 401, 410. *Munyon* v. *State,* 33 Vroom, 1. *People* v. *Van Wormer,* 175 N. Y. 188. *Commonwealth* v. *Farrell,* 319 Pa. 441. Wigmore on Evidence (3d ed.) § 580. Plainly, if Bistany had been tried with the defendants he would have been competent to testify had he elected to do so. *Commonwealth* v. *Brown,* 130 Mass. 279. Because he was not so tried, the defendants would have us hold that he was incompetent. To such a proposition we cannot assent; indeed, the mere statement of it supplies the answer. What has been said also disposes of Murray's requests for rulings (assignments of error 17 to 21) filed in connection with his motion for a new trial.

5. The defendants Murray and Domanski contend that the judge erred in denying their motions for directed verdicts on the indictment charging that they "being armed

with a dangerous weapon, did assault Joseph D'Amico with intent to rob him," G. L. (Ter. Ed.) c. 265, § 18 (assignments of error 11). They concede in effect that the evidence would have warranted a finding of an aggravated assault at common law and urge that under the procedure set forth in *Commonwealth* v. *Novicki*, 324 Mass. 461, the case should be remanded with instructions to resentence the defendants for an aggravated assault, a common law offence which is a misdemeanor. See *Commonwealth* v. *O'Donnell*, 150 Mass. 502; *Commonwealth* v. *Morgan*, 280 Mass. 392, 394. The motions for directed verdicts were general; they did not as was the case with two of the motions in the *Novicki* case ask for verdicts of not guilty with respect to the more serious offence. Rather they were similar to the motion presented by the defendant Voutiritsa in that case. He asked that a verdict of not guilty be directed in his favor. But it was held that he was not entitled to it since the indictment which charged the offence of armed robbery defined by G. L. (Ter. Ed.) c. 265, § 17, as appearing in St. 1943, c. 250, § 1, charged not only that offence but also, as necessarily included therein, the lesser offences of robbery not being armed, assault, and larceny. The motion, being general, was held to apply to any offence properly charged in the indictment. Hence since there was evidence which would have warranted a verdict of larceny it was held that the motion for a directed verdict was properly denied. That principle is applicable here, for there was evidence which would have supported verdicts of guilty with respect to the lesser offences in any event. Hence the motions were rightly denied.

6. The defendant Murray urges that the judge erred in denying his motion for a directed verdict on the indictment which charged that he "did break and enter in the night time . . . [the dwelling of Joseph D'Amico] with intent therein to commit larceny" (assignment of error 11). He argues that the evidence was insufficient to show a breaking. We do not agree. There was evidence that shortly after the intruders left a door to the house which was usually

locked was open and its lock was broken. This was suffi-
cient to warrant a finding that the house was broken into.

The further point argued by Murray to the effect that he
could be sentenced only for the lesser offence defined by
G. L. (Ter. Ed.) c. 266, § 16A, inserted by St. 1945, § 229,
rather than by that defined by c. 266, § 16, as appearing in
St. 1943, c. 343, § 1, on the ground that the larceny which
was the object of the breaking could have been petty larceny,
need not be considered. No such question was presented by
Murray's motion. That motion asked the judge to direct
a verdict of not guilty on the ground that the evidence was
insufficient to warrant a finding that he had committed the
crime charged in the indictment. Even if we assume that
the indictment charged only the offence defined in § 16A,
the motion was rightly denied, because the evidence amply
warranted a finding that the defendant committed that
offence. A motion for a directed verdict does not reach the
question of sentence.

7. D'Amico when testifying for the Commonwealth had
identified Domanski as his assailant. Thereafter one Kelli-
her, a police officer called by the Commonwealth, testified
that he, accompanied by Joseph D'Amico and two police
officers, went to the Charles Street jail where Domanski
was incarcerated; that while there they viewed a line-up
of nine men; that D'Amico identified one of the men in
the line-up who said he was Domanski; that when asked by
one of the officers whether he had ever seen this man before,
D'Amico replied, "No, not until he shot me in the neck."
It is contended by Domanski that this evidence was in-
admissible as hearsay (assignment of error 6). The short
answer is that it came in without objection. True, there
was an exception to a question which had preceded this
testimony on the ground that it was leading, but nothing
was done by counsel for Domanski respecting the testimony
now challenged that would lead the judge to believe that
he was objecting to it. The present contention is obviously
an afterthought. We are not to be understood, however,
as intimating that the evidence was incompetent. See

*Commonwealth* v. *Rollins,* 242 Mass. 427, 428, 429; *Commonwealth* v. *Powers,* 294 Mass. 59, 60–61; *United States* v. *Forgano,* 190 Fed. (2d) 687 (C. A. 2); *People* v. *Slobodion,* 31 Cal. (2d) 555, 559–560; *State* v. *Frost,* 105 Conn. 326, 340–342; Wigmore on Evidence (3d ed.) § 1130.

8. Other points, relied on by the defendants but not discussed in this opinion, have not been overlooked. We find nothing in them that requires discussion. It follows that the judgments in so far as they relate to the defendant Green are reversed and the verdicts as to him are set aside, and the judgments in so far as they relate to the defendants Murray and Domanski are affirmed.

*So ordered.*