BUDD, J.
**241 The Federal Violence Against Women Act (VAWA), as amended, is a comprehensive statute designed to combat violence against women in its many forms. See 34 U.S.C. §§ 12291 et seq.[1] Among other safeguards provided by VAWA, the statute, as reauthorized in 2013 and implemented by the United States Department of Housing and Urban Development (HUD) regulations, protects tenants or otherwise qualified applicants of housing assistance under a covered housing program[2] from being denied or evicted from housing "on the basis that the applicant or tenant is or has been a victim of domestic violence."[3] 34 U.S.C. § 12491(b)(1). See 24 C.F.R. § 5.2005(b).
Here, Y.A., an alleged victim of domestic violence, appealed from a lower court *1240 judge's order of execution on the fifth agreement for judgment between Y.A. and the Boston Housing Authority (BHA), a covered housing provider.[4] ,[5] Y.A. argued that the motion judge failed to consider whether the alleged breach of the agreement for judgment was a direct result of domestic violence. **242 On April 16, 2019, we issued an order to the Eastern Division of the Housing Court Department: "The January 12, 2018, order allowing the [BHA's] motion to issue execution is reversed. The matter is remanded to the Housing Court for further proceedings consistent with the opinion to follow."
This opinion sets forth the reasons for the order.[6]
Background. Y.A. has resided in the BHA's subsidized housing since October 2013. Following nonpayment of rent,[7] the BHA served Y.A. with a notice to quit on March 27, 2014.[8] On June 9, 2014, the BHA initiated a summary process (eviction) action in the Housing Court.[9]
On the hearing date, the parties entered into an agreement for judgment, which suspended the eviction action on the condition that Y.A. make a fixed monthly payment for use and occupancy and for rent arrearage. The parties agreed that if Y.A. failed to adhere to the payment schedule, the BHA could revive the eviction process by moving for the issuance of execution for possession of the premises, and damages owed, including costs and interest.
Y.A. failed to make the required payments under the agreement,[10] and BHA moved for an issuance of execution. On September 10, 2014, the parties entered into an amended agreement for judgment with new payment terms. Over the course of **243 the following three years, the parties entered into a total of five agreements for judgment, each precipitated by Y.A.'s failure to adhere to the agreed-upon payments and the BHA's motions for issuance of execution. After Y.A. violated the fifth agreement, the BHA filed the instant motion *1241 for issuance of execution on December 11, 2017.
A hearing on the motion was held on January 10, 2018, at which time Y.A. stated that she was working with an agency to help pay the rent arrearage. When asked by the judge why she had made only one payment since the date of the final agreement, Y.A. responded:
"I was in an abus[ive] relationship. He would take everything from me. One day I decide[d] to stop that. I called the police on him. I'm ... trying to deal with a restraining order, and now I'm trying to get back all my life together because I do not want to be in a relationship like that. He would take -- I've lost everything already. I'm about to lose my apartment. I don't want that."
The judge then asked Y.A. if she had spoken to the property manager at any point about the abusive relationship after she signed the final agreement, to which Y.A. responded: "No.... I go in the office one time, but, after that, I tried to figure it out like how I'm going to pay the rent and how I'm going to do all this."
The judge allowed the BHA's motion, finding that Y.A.'s failure to make the required payments set forth in the final agreement constituted a violation of a material term of the agreement and that the BHA had "acted reasonably and cannot be expected to do any more." See G. L. c. 239, § 10. The judge made no reference to Y.A.'s statements regarding the alleged abusive relationship in his findings. Y.A. appealed, and we transferred the case to this court on our own motion.
Discussion. 1. VAWA housing protections. Under VAWA, "[a]n applicant for or tenant of housing assisted under a covered housing program may not be denied admission to, denied assistance under, terminated from participation in, or evicted from the housing on the basis that the applicant or tenant is or has been a victim of domestic violence ...." 34 U.S.C. § 12491(b)(1). See 24 CFR § 5.2005(b).
In order for an applicant or tenant to seek assistance pursuant **244 to VAWA from a covered housing provider (landlord),[11] he or she must "[i]nform the [landlord] that [he or she is] a victim of domestic violence" and further must "[p]rovide enough information for the [landlord] to make a determination regarding the adverse factor [he or she is] claiming was a direct result of domestic violence." Violence Against Women Reauthorization Act of 2013 Guidance, United States Department of Housing and Urban Development and the Office of Public and Indian Housing, PIH-2017-08 (HA) § 7.3, at 9 (May 19, 2017) (HUD Guidance), https://www.hud.gov/sites/documents/PIH-2017-08VAWRA2013.PDF [https://perma.cc/X9PJ-B3L8]. Upon being made aware that an applicant or tenant seeks protection under VAWA, the landlord "should consider the individual's statement and any possible supporting documentation in determining if an adverse factor was a direct result of domestic violence."[12] Id. If the landlord determines that further information is needed, the *1242 landlord may make a written request seeking additional supporting documentation from the applicant or tenant.[13] See 34 U.S.C. § 12491(c)(1) ; 24 C.F.R. § 5.2007(a)(1). The failure of the tenant to provide the requested **245 documentation within fourteen days could result in, among other things, eviction.[14] See 34 U.S.C. § 12491(c)(2)(A)(iv) ; 24 C.F.R. § 5.2007(a)(2)(i)(D).
Where the applicant or tenant establishes that he or she is entitled to VAWA protection, the landlord is prohibited from evicting the tenant for any reason that is a direct result of the domestic violence, from denying the applicant or tenant's admission to or assistance under the covered program, and from terminating the tenant's participation in the covered program. See 34 U.S.C. § 12491(b)(1) ; 24 CFR § 5.2005(b).
Landlords "are encouraged to undertake whatever actions permissible and feasible under their respective programs to assist individuals residing in their units who are victims of domestic violence ... to remain in their units or other units under the covered housing program or other [landlords], and for the [landlord] to bear the costs of any transfer, where permissible." 24 C.F.R. § 5.2009(c). Under VAWA, upon request, a landlord is required to relocate a tenant to a safe unit if he or she "reasonably believes there is a threat of imminent harm from further violence if the tenant remains within the same dwelling unit that the tenant is currently occupying." 24 C.F.R. § 5.2005(e)(2)(i) and (ii)(A).[15] The landlord also may "remove a household member from [the] lease in order to evict, remove, terminate occupancy rights, or terminate assistance to such member who engages in criminal activity directly relating to domestic violence ... against an affiliate individual or other individual." 24 C.F.R. § 5.2009(a). This is to be done "[w]ithout regard to whether the household member is a signatory to the lease" and "[w]ithout evicting, removing, terminating assistance to, or otherwise penalizing a victim **246 of such criminal activity who is *1243 also a tenant or lawful occupant."[16] 24 C.F.R. § 5.2009(a)(i)-(ii). In addition, the landlord may refer the tenant to local domestic violence programs that offer a variety of services including support groups, individual counselling, legal advice, and financial planning.[17] See Domestic Violence Programs, Massachusetts Executive Office of Public Safety and Security, https://www.mass.gov/service-details/domestic-violence-programs [https://perma.cc/P6G6-G8NS].
2. Application. Given the framework of VAWA, its corresponding regulations, and the HUD Guidelines, ideally a tenant will notify the landlord that domestic violence has affected the tenant's ability to pay rent or has otherwise caused the tenant to violate the terms of the lease. The landlord can then take steps pursuant to the HUD Guidelines to apply VAWA. If a landlord denies VAWA protections and initiates summary process, the tenant may raise a VAWA defense in response. See 34 U.S.C. § 12491(b)(1).
Importantly, the HUD Guidance requires an applicant or tenant to notify a landlord of the presence of domestic violence if he or she seeks VAWA protection, see HUD Guidance, supra at § 7.3. However, it is not a prerequisite to raising VAWA as a defense to eviction in court. The HUD Guidance was created to "provide[ ] guidance to Public Housing Agencies ... and owners on the requirements of the [VAWA statute and regulations]"; it is not binding on the courts. See id. at § 1. See also Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). Accordingly, an applicant or tenant who has not previously informed his or her landlord of the alleged domestic violence is not precluded from **247 raising VAWA in court.
Here, Y.A. did not raise the issue of domestic violence until she appeared in court for the hearing on the BHA's motion for issuance of execution on her alleged breach of the fifth agreement for judgment, and when she did so, it was not necessarily meant as a VAWA defense. However, neither the statute nor the regulations address when or how a tenant must assert his or her rights under VAWA in a summary process action. Cf. 34 U.S.C § 12491 ; 24 C.F.R. § 5.2005. See Matter of Johnson v. Palumbo, 154 A.D.3d 231, 244, 60 N.Y.S.3d 472 (N.Y. 2017). Nor does VAWA require a particular threshold of proof to raise the defense. See 34 U.S.C. § 12491(c)(5) ; 24 C.F.R. § 5.2007(b)(3). Thus, here, Y.A.'s statement at the hearing that she was in an abusive relationship and that her partner "would take everything" from her was not untimely. Further, Y.A.'s mention of domestic violence as a possible *1244 factor in her failure to make the required payments was a sufficient signal to the judge to inquire further to elicit additional facts in order to determine whether Y.A. was entitled to VAWA protection. See S.J.C. Rule 3:09, Canon 2, Rule 2.6 & comment 1A (2016).
We note that when the judge asked Y.A. whether she had raised the matter with the property manager, Y.A. initially responded, "No," but then went on to explain, "I go in the office one time, but, after that, I tried to figure it out ...." The judge did not inquire further on Y.A.'s ambiguous response. As mentioned supra, bringing issues of domestic violence to the attention of the manager of a public housing agency is not a prerequisite to raising VAWA as a defense to eviction in a subsequent court proceeding; however, we emphasize that the best practice is for a tenant to inform the landlord of any domestic violence in order to allow the landlord to determine whether the domestic violence adversely affected the tenant's ability to adhere to the conditions of the lease or agreement for judgment.
We conclude that where a judge is given reason to believe that domestic violence is or might be relevant to a landlord's basis for eviction, the judge must ensure that he or she has sufficient evidence to make a determination whether the tenant is entitled to VAWA protections, and such determination must be supported by findings.
Asserting a VAWA defense does not guarantee a successful outcome. As discussed supra, there must be a causal connection between incidents of domestic violence and a tenant's failure to **248 comply with the terms of the lease or the agreement for judgment. In addition, "VAWA does not limit the ability of a [landlord] to [evict a tenant] for a lease violation unrelated to domestic violence ... provided that the [landlord] does not subject an individual who has been the victim of such violence to a more demanding standard than other tenants." Matter of Johnson, 154 A.D.3d at 241, 60 N.Y.S.3d 472. See 34 U.S.C. § 12491(b)(3)(C)(ii) ; 24 C.F.R. § 5.2005(d)(2).
Thus, Y.A. may or may not be successful in using VAWA to stave off eviction. Such success will depend on the circumstances surrounding the domestic violence alleged by Y.A. and whether the motion judge finds that it contributed to Y.A.'s failure to make the agreed-upon payments.[18] Accordingly, in our order we remanded the case for further inquiry and findings whether domestic violence contributed to Y.A.'s failure to make agreed-upon payments.[19] If the judge determines that Y.A. is entitled to protection under VAWA, the BHA should be well-equipped to assist her. Indeed, the BHA has "several policies and programs to assist applicants and residents in situations of domestic violence and family justice." Boston Housing Authority, Domestic Violence and Family Justice, http://www.bostonhousing.org/en/Departments/Public-Safety/Domestic-Violence-and-Family-Justice.aspx [https://perma.cc/L2U5-RN95].
3. BHA's arguments. We briefly address two arguments BHA raises pertaining to Y.A.'s right to assert VAWA as *1245 a defense.[20] First, BHA suggests that, by raising VAWA, Y.A. seeks either to alter the terms of the final agreement for judgment or to have the agreement declared invalid. To the contrary, Y.A. simply seeks to raise a defense to her breach of that agreement, as is her right.[21] **249 In addition, the BHA contends that Y.A. is not entitled to VAWA protections because her failure to pay rent was chronic rather than "temporary," referencing the HUD Guidance, supra at § 7.2. This is a misreading of that document, which lists "temporary failure to pay rent" as one of several "examples" of "adverse factors," that might be a direct result of domestic violence -- it is not a precondition to receiving VAWA protection.[22] See id.

The Violence Against Women Act (VAWA) was originally codified as part of title 42 of the United States Code but was editorially reclassified in various sections of title 34. See, e.g., 42 U.S.C. §§ 13925, 14043e et seq. (2012 & Supp. V 2017).

A covered housing program is a "HUD program covered by [VAWA]." 24 C.F.R. § 5.2001(a) (2018). A covered housing program "generally" provides two types of assistance: "[t]enant-based rental assistance, which is rental assistance that is provided to the tenant; and project-based assistance, which is assistance that attaches to the unit in which the tenant resides," and consists of "operating assistance, development assistance, and mortgage interest rate subsidy." 24 C.F.R. § 5.2001(b)(1).

"Domestic violence" is defined as "felony or misdemeanor crimes of violence by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner...." 34 U.S.C. § 12291(8).

A "covered housing provider" is defined as "the individual or entity under a covered housing program that has responsibility for the administration and/or oversight of VAWA protections and includes [public housing agencies], sponsors, owners, mortgagors, managers, State and local governments or agencies thereof, nonprofit or for-profit organizations or entities." 24 C.F.R. § 5.2003. Hereinafter, we refer to a covered housing provider as a "landlord" for purposes of this opinion.

The Boston Housing Authority (BHA) administers rental subsidies through various programs and provides subsidized housing to qualifying low-income tenants.

We acknowledge the amicus briefs submitted by Greater Boston Real Estate Board and Institute of Real Estate Management; Massachusetts Domestic Violence and Housing Advocates; and the American Civil Liberties Union, American Civil Liberties Union of Massachusetts, Community Legal Services of Philadelphia, Mid-Minnesota Legal Aid, National Housing Law Project, National Network to End Domestic Violence, and the Sargent Shriver National Center on Poverty Law.

From December 1, 2013, through March 1, 2014, Y.A. made one rent payment of ninety dollars.

The notice to quit provided that Y.A. had accrued a total of $ 330 in rent arrearage and that if Y.A. "fail[ed] to quit the premises, or pay the rent due within [fourteen] days of [her] receipt of this notice, the BHA [would] file an action in housing court to evict [her] and to recover the rent due plus court costs at which time [she could] present a defense."

See Adjartey v. Central Div. of the Hous. Court Dep't, 481 Mass. 830, 850, 120 N.E.3d 297 (2019) (Appendix), for a more detailed explanation of summary process.

The parties entered into an agreement for judgment on June 25, 2014. Y.A. failed to make the agreed-upon payments in August and September 2014.

Although we refer to a "covered housing provider" as the "landlord" for purposes of this opinion, the term "covered housing provider" is defined more broadly, see note 4, supra.

The guidance provided by HUD gives examples of factors that may be the direct result of domestic violence, including a tenant's failure to pay rent. See Violence Against Women Reauthorization Act of 2013 Guidance, United States Department of Housing and Urban Development and the Office of Public and Indian Housing, PIH-2017-08 (HA) § 7.2 (May 19, 2017) (HUD Guidance), https://www.hud.gov/sites/documents/PIH-201708VAWRA2013.PDF [https://perma.cc/X9PJ-B3L8].

The applicant or tenant may submit any one of the following forms of documentation:
"(i) The certification form described in § 5.2005(a)(1)(ii) ; or
"(ii) A document:
"(A) Signed by an employee, agent, or volunteer of a victim service provider, an attorney, or medical professional, or a mental health professional (collectively, 'professional') from whom the victim has sought assistance relating to domestic violence, dating violence, sexual assault, or stalking, or the effects of abuse;
"(B) Signed by the applicant or tenant; and
"(C) That specifies, under penalty of perjury, that the professional believes in the occurrence of the incident of domestic violence, dating violence, sexual assault, or stalking that is the ground for protection and remedies under this subpart, and that the incident meets the applicable definition of domestic violence, dating violence, sexual assault, or stalking under § 5.2003 ; or
"(iii) A record of a Federal, State, tribal, territorial or local law enforcement agency, court, or administrative agency; or
"(iv) At the discretion of a [landlord], a statement or other evidence provided by the applicant or tenant."
24 C.F.R. § 5.2007(b)(1). See 34 U.S.C. § 12491(c)(3)(A)-(D).

Failure to provide this documentation within the allotted time could also result in denial of admission to the covered program, denial of assistance under the covered program, or termination of participation in the covered program. See 34 U.S.C. § 12491(c)(2)(A)(i)-(iii) ; 24 C.F.R. § 5.2007(a)(2)(i)(A)-(C).

VAWA requires that each landlord "adopt an emergency transfer plan ... based on HUD's model emergency transfer plan." 24 C.F.R. § 5.2005(e).

"If a [landlord] exercises the option to bifurcate a lease as provided in [24 C.F.R. § 5.2009 (a) ], and the individual who was evicted or for whom assistance was terminated was the eligible tenant under the covered housing program, the [landlord] shall provide to any remaining tenant or tenants that were not already eligible a period of [ninety] calendar days from the date of bifurcation of the lease to: (A) [e]stablish eligibility for the same covered housing program under which the evicted or terminated tenant was the recipient of assistance at the time of bifurcation of the lease; or (B) [e]stablish eligibility under another covered housing program; or (C) [f]ind alternative housing." 24 C.F.R. § 5.2009(b)(2).

See, e.g., Safe Passage, https://safepass.org/[https://perma.cc/PTE6-MGSA] (providing counselling, legal advice, and support groups); Woman Shelter, About Us, https://www.womanshelter.org/about-us/ [https://perma.cc/GF5L-G9G3] (providing individual counselling, support groups, medical, financial and housing advocacy); Casa Myrna, Economic Stability, https://www.casamyrna.org/get-support/economic-stability/ [https://perma.cc/AK7A-3TJ4] (providing financial planning program).

Y.A. included with the instant appeal an affidavit detailing further information regarding the alleged abusive relationship; however, that information was not before the motion judge.

Although the BHA argues that the judge decided in its favor after having taken all of the circumstances into account, including a potential VAWA defense, we see no evidence in the judge's findings that he considered VAWA.

We have considered the BHA's remaining arguments and have determined that they are without merit. See Commonwealth v. Domanski, 332 Mass. 66, 78, 123 N.E.2d 368 (1954).

To the extent that BHA argues that Y.A. has waived any defense to the breach of the original lease, we agree. Kelton Corp. v. County of Worcester, 426 Mass. 355, 360, 688 N.E.2d 941 (1997) ("any exceptions made by either party to the underlying actions are extinguished unless specifically noted in the [agreement for] judgment or otherwise incorporated into the judgment").

At any rate, as a document created to give guidance to public housing agencies and owners, the HUD Guidance is not binding on courts. See Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).